ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 1 7 2010

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DRUPATTY JAIPERSAUD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| | ) | NO. 1:10-CV-0455 |
| vs. | ) | |
| | ) | |
| LAWRENCEVILLE POLICE | ) | COMPLAINT FOR |
| DEPARTMENT and DETECTIVE | ) | DAMAGES |
| T. ASHLEY, as an | ) | |
| Individual. | ) | |
| | ) | Jury Trial Demanded |
| Defendants. | ) | |

## COMPLAINT

### Introduction

1.   This is an action for monetary damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment to the United States Constitution, and State law against Lawrenceville Police Department and Detective T. Ashley, in his individual capacity. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

2.   It is alleged that Defendant T. Ashley unreasonably seized Plaintiff without probable cause when she was unable to pull surveillance video of an alleged confrontation upon his command. As a result of this unreasonable seizure,

Plaintiff was imprisoned, violating her rights under the Fourth Amendment to the United States Constitution.

## Parties

3.      Plaintiff Drupatty Jaipersaud was at all material times a resident of Grayson, Georgia, and of full age.

4.      Defendant T. Ashley, a detective, was at all times relevant to this Complaint a duly appointed and acting officer of the Lawrenceville Police Department, acting under color of law, to wit, under color of the statutes, regulations, policies, customs, and usages of the State of Georgia and County of Gwinnett.

## Facts

5.      On or about September 24, 2008, Plaintiff was working her typical 18 hour day at a Chevron station she owns in Lawrenceville, Georgia.

6.      Due to the gas crisis at the time, her store, like most others, had run out of gas.

7.      A potential customer entered the store and began yelling at Plaintiff and her husband because they had no gas.

8.      The customer called Plaintiff and her husband "coolies," a racist term.

9. Plaintiff demanded that the customer leave the store and the customer only complied when Plaintiff picked up the phone to call the police.

10. Irritated that there was no gas and that he had been kicked out of the store and in an attempt to trump her call, the customer called the police and manufactured a story stating that Plaintiff had hit him and called him a "nigger."

11. Defendant Ashley and other officers responded to the scene and interviewed the customer.

12. Defendant Ashley entered the store and immediately blamed Plaintiff.

13. Plaintiff professed her innocence, indicating that not only did she not call the customer a racist remark, but she also did not touch him.

14. Plaintiff insisted that the surveillance video would show that she was telling the truth, but indicated that her son was the only one who knew how to operate the equipment. She provided Defendant with the manual.

15. Defendant Ashley responded belligerently and demanded Plaintiff to have her son there within an hour or be arrested.

16. Plaintiff tried valiantly to get her son on the phone, but he was in class and had his phone turned off.

17. Plaintiff began to sob uncontrollably and cried aloud that she did nothing wrong.

18. Defendant Ashley, in what he later described as fear for his safety, arrested Plaintiff for disorderly conduct.

19. Defendant Ashley is a very large male with a muscular build and was armed with a gun.

20. Plaintiff is a very small female and was unarmed.

21. Defendant Ashley's belief that his safety was in danger was unreasonable and insufficient to support a finding of probable cause.

22. Defendant Ashley had threatened to arrest Plaintiff if she did not bring up the surveillance video without first determining what he would arrest her for.

23. It was only after Plaintiff was unable to reach her son that Defendant Ashley manufactured probable cause and arrested her.

24. Defendants' actions were malicious and deliberate.

25. Plaintiff was found 'not guilty' on all charges (a charge of battery was later added by the Solicitor's office and was equally without merit given a complete lack of any evidence or injury).

26. The jury in her trial expressed disgust that Defendant Ashley arrested the Plaintiff and recommended that she file this suit.

27. As a direct and proximate result of the said acts of Defendants, Plaintiff suffered the following injuries and damages:

4

      a. Violation of her Constitutional Rights under the Fourth Amendment to the United States Constitution to be free from an unreasonable search and seizure of her person; and,

      b. Loss of her physical liberty; and,

      c. Physical pain and suffering and emotional trauma and suffering, requiring the expenditure of money for treatment.

29. The actions of Defendant violated the following clearly established and well-settled Federal Constitutional Rights of Plaintiff:

      a. Freedom from the unreasonable seizure of her person under the Fourth Amendment of the United States Constitution.

## COUNT I

### 42 U.S.C. § 1983 Against Defendant Ashley

30. Paragraphs 1 through 29 are incorporated herein by reference as though fully set forth.

31. Plaintiff claims damages for the injuries set forth above under 42 U.S.C. § 1983 against Defendant for violation of her constitutional rights under color of law.

## COUNT II

### False Arrest Against Defendant Ashley

32. Paragraphs 1 through 31 are incorporated herein by reference as though fully set forth.

33. Defendant acted maliciously in ordering Plaintiff bring up surveillance video of the incident or be arrested.

34. Plaintiff's arrest was without probable cause and false in violation of O.C.G.A. § 51-7-1.

## COUNT III

### False Imprisonment Against Defendant Ashley

35. Paragraphs 1 through 34 are incorporated herein by reference as though fully set forth.

36. Plaintiff's arrest caused her to be unlawfully detained and deprived of her personal liberty for hours in jail in violation of O.C.G.A. § 51-7-20.

## COUNT IV

### 42 U.S.C. § 1983 Against the City of Lawrenceville

37. Paragraphs 1 through 36 are incorporated herein by reference as though fully set forth.

38. Prior to September 24, 2008, the City of Lawrenceville, Georgia, developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of Lawrenceville, Georgia, which caused the violation of Plaintiff's rights.

39. It was the policy and/or custom of the City of Lawrenceville to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the City of Lawrenceville.

40. It was the policy and/or custom of the City of Lawrenceville to inadequately supervise and train its police officers, including Defendant Detective, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

41. As a result of the above described policies and customs, police officers and detectives of the City of Lawrenceville, Georgia, including the Defendant Detective, believed that their actions, including but not limited to Defendant's falsely charging someone with a crime, would not be properly monitored by supervisory officers and that misconduct would be not investigated or sanctioned, but would be tolerated.

42. When incidents of false arrest and/or false imprisonment are brought to the City's attention, the City does not:

    a. Investigate the matter in an unbiased matter; and/or,

    b. Report unfavorable evidence; and/or,

    c. Include all testimony of non-police witnesses.

43. The City further attempts to shield its officers and hide misconduct in so much as it does not comply with the Georgia Open Records Act. Such actions are systematic and conducted in the normal course of business.

44. It is the City of Lawrenceville's policy and custom to encourage its officers and detectives to arrest as many people as possible in order to overcrowd its jails and receive federal funding.

45. It is the City of Lawrenceville's policy and custom to encourage arrest contests and ticket contests among its officers and detectives.

46. The above described policies and customs demonstrated a deliberate indifference on the part of the policymakers of the City of Lawrenceville to the constitutional rights of persons within the City of Lawrenceville, and were the cause of the violations of plaintiff's rights alleged herein.

**WHEREFORE**, Plaintiff prays that she has a jury trial on all issues and judgment against the Defendant as follows:

a. That Plaintiff recover for the deprivation of her civil rights and liberties in an amount to be determined by the enlightened conscience of a jury; and,

b. That Plaintiff recover for the physical and mental pain and suffering, loss of enjoyment of life, and emotional distress in an amount to be determined by the enlightened conscience of a jury; and,

c. That Plaintiff recover for the loss of business and wages in an amount to be determined by the enlightened conscience of a jury; and,

d. That Plaintiff recover punitive damages in an amount to be determined by the enlightened conscience of a jury sufficient to prevent the actions set forth herein from occurring again; and,

e. That Plaintiff recover attorneys fees and costs of litigation as allowed under 42 U.S.C. § 1988 and State law; and,

f. That Plaintiff recover such other and further relief as is just and proper; and,

g. That Plaintiff's demand that all issues be tried before a jury be granted.

Dated this 17 day of February 2010.

                                                                           */s/ signature*

Bar Number: 554911
Attorney for Plaintiff
Robert Douglas Ortman
PO Box 724263
Atlanta, Georgia 31139-4263
Telephone: (770) 449-2080
Fax: (866) 764-9320
E-mail: robertortman123@gmail.com