IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DRUPATTY JAIPERSAUD, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | 10-CV-455-JEC |
| vs. ) | |
| ) | |
| TIMOTHY R. ASHLEY, in his ) | |
| individual capacity, ) | |
| ) | |
| Defendant. ) | |

## AMENDED COMPLAINT

### Introduction

1. This is an action for monetary damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and under Georgia state law against Detective Timothy R. Ashley, in his individual capacity. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

2. It is alleged that Defendant Ashley unreasonably seized Plaintiff without probable cause when she was unable to pull surveillance video of an alleged confrontation upon his command and subsequently questioned Defendant Ashley's authority to order her (Plaintiff) around in her own store. As a result of

1

this unreasonable seizure, Plaintiff was imprisoned, violating her rights under the Fourth and Fourteenth Amendments to the United States Constitution and under state statutory and common law.

## Parties

3. Plaintiff Drupatty Jaipersaud was at all material times a resident of Grayson, Georgia, and of full age. Plaintiff is of Guyanese origin.

4. Defendant Ashley, was at all times relevant to this Complaint a duly appointed and acting officer of the police department of the City of Lawrenceville, acting under color of law, to wit, under color of the statutes, regulations, policies, customs, and usages of the State of Georgia, the County of Gwinnett, and/or the City of Lawrenceville.

## Facts

5. Plaintiff is the owner of a Chevron gas station in located on Hurricane Shoals Boulevard in Lawrenceville, Georgia. On or about September 24, 2008, Plaintiff was working her typical 18 hour day at said gas station.

6. Due to the gas crisis at the time, Plaintiff's station, like most others in the Atlanta metro area, had run out of gas. Plaintiff removed the gas prices from atop of the gas pumps and had placed signs directly on the gas pumps indicating that the station did not have any gas.

7. A potential customer, Mr. Leon Noble, had driven up to one of the gas pumps and attempted to purchase gas despite what were clear indications that Plaintiff's station did not have any gas. Mr. Noble's attempt to purchase gas was unsuccessful. Mr. Noble then entered Plaintiff's store in frustration and accused Plaintiff of refusing to sell gas to him because of his race.

8. Plaintiff denied that she was being racist and explained to Mr. Noble that his purchase was unsuccessful because her gas station did not have any gas. Mr. Noble, still frustrated, called Plaintiff a "coolie," a racist term generally directed toward individuals of Central Asian or Indian origin.

9. Plaintiff demanded that Mr. Noble leave the store but Mr. Noble refused to do so.

10. Mr. Noble then manufactured a story stating that Plaintiff had hit him and called him a "nigger." Mr. Noble told this story to his wife, Nathalie Noble, who at that point, had exited the car by the gas pump and entered Plaintiff's store. Both Mr. Noble and his wife then began yelling and pointing their fingers at Plaintiff and her husband and refused to leave Plaintiff's store. Plaintiff and her husband retreated to the glass-partitioned cash register area, while Mr. and Mrs. Noble angrily stalked around the front of Plaintiff's store, continuing to yell at Plaintiff and her husband.

11. Plaintiff called the police in an effort to seek assistance in dealing with Mr. and Mrs. Noble. Defendant Ashley and other officers from the City of Lawrenceville Police Department responded to the scene and first interviewed Mr. and Mrs. Noble, both of whom were standing outside by the store entrance.

12. Defendant Ashley and other officers then entered Plaintiff's store to further their investigation. Defendant Ashley questioned Plaintiff in a manner that suggested that he had already concluded that Plaintiff was at fault.

13. Plaintiff professed her innocence, indicating that it was Mr. Noble who had started an argument with her by calling her a racist name and that Mr. Noble and his wife refused to leave the store when asked to do so. Plaintiff also denied touching or hitting Mr. Noble. The entire incident between Plaintiff and Mr. and Mrs. Noble was documented by the store's video surveillance system.

14. Plaintiff insisted that the surveillance video would show that she was telling the truth, but indicated that her son, Leslie Narain, was the only one who knew how to operate the equipment. She provided the operating manual to a City of Lawrenceville police officer who was assisting in the investigation. The officer was unsuccessful in his attempt to operate the video surveillance machine. Plaintiff continually tended to customers who had entered her store during the pendency of the investigation.

15. Defendant Ashley became frustrated with the slow pace of the investigation and demanded that Plaintiff have her son at the store immediately so that he could view the video or that Plaintiff would be arrested. Plaintiff explained to Defendant Ashley that his demand was unreasonable because her son was at that moment attending class at Clayton State University, which is over an hour away from the store.

16. Plaintiff called her son on his cell phone but could not reach him because he was in class and his phone was turned off. Defendant Ashley still insisted that Plaintiff have her son at the store immediately.

17. Plaintiff became upset and told Defendant Ashley that he could not come into her store, order her around, and make such unreasonable demands on her.

18. In response, Defendant Ashley seized Plaintiff by her arm and forcefully pulled her out of the store. Defendant Ashley then handcuffed Plaintiff and told her she was under arrest but did not specify at that point the reason for her arrest. Plaintiff was transported to the Gwinnett County Jail and incarcerated there for approximately 11 hours before she could post bail.

19. Defendant Ashley later wrote up a citation for Plaintiff, citing as justification for his arrest of Plaintiff, a violation of the disorderly conduct

provision of the City of Lawrenceville, General Code of Ordinances. Ch. 31-101 (c) & (k). Defendant Ashley also stated on the citation that Plaintiff had "struck patron while conducting business then refused to cooperate w/ police." A true and correct copy of said Citation is attached hereto as Exhibit A.

20. Defendant Ashley is a very large male with a muscular build and was armed with a gun. Mr. Leon Noble is also a large man and had an athletic build. Plaintiff is a very small female and was unarmed.

21. From the outset of the investigation, Plaintiff had disputed Mr. Noble's accusation that Plaintiff had hit him. Yet Defendant Ashley arrested Plaintiff without even verifying whether this claim was true or not. Defendant Ashley never made an effort to view the surveillance video after he arrested Plaintiff; he did so for the first time on the eve of his testimony at Plaintiff's subsequent criminal trial on the charges stemming from the arrest. At no time during the investigation did Plaintiff curse at or provoke Defendant Ashley in any way. Nor did Plaintiff ever physically interfere with or obstruct Defendant Ashley or any of the other officers during the course of the investigation. Plaintiff never once asked Defendant Ashley or any other officer to leave her store.

22. Defendant Ashley had threatened to arrest Plaintiff if she did not bring up the surveillance video without first determining what he would arrest her for.

23. It was only after Plaintiff was unable to reach her son that Defendant Ashley manufactured probable cause and arrested her.

24. Defendant Ashley's actions were malicious and deliberate. No reasonable officer would have arrested Plaintiff on the basis of what was known to Defendant Ashley and to the other officers who were participating in the investigation at Plaintiff's gas station at the time of Plaintiff's arrest.

25. Plaintiff went to trial on the criminal charges that stemmed from her arrest by Defendant Ashley. During the trial, Defendant Ashley testified that at no point prior to his arrest of Plaintiff was he scared of Plaintiff. In fact, Defendant Ashley testified that he was the one who had acted aggressively toward Plaintiff, pointing his finger in her face and raising his voice toward her after she was unable to bring up the security video. Defendant admitted that he arrested Plaintiff because, in part, he was unable to view the surveillance video. Plaintiff was found 'not guilty' on all charges (a charge of battery was later added by the Solicitor's office and was equally without merit given a complete lack of any evidence or injury).

26. The jury in her trial expressed disgust that Defendant Ashley arrested the Plaintiff and recommended that she file this suit.

27. As a direct and proximate result of the said acts of Defendant, Plaintiff suffered the following injuries and damages:

    a. Violation of her Constitutional Rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of her person; and,

    b. Loss of her physical liberty; and,

    c. Physical pain and suffering and emotional trauma and suffering.

29. The actions of Defendant violated the following clearly established and well-settled Federal Constitutional Rights of Plaintiff:

    a. Freedom from the unreasonable seizure of her person under the Fourth and Fourteenth Amendments to the United States Constitution.

## COUNT I

**42 U.S.C. § 1983 Against Defendant Ashley**

30. Paragraphs 1 through 29 are incorporated herein by reference as though fully set forth.

31. Defendant Ashley breached his duty to Plaintiff arising by operation of the Fourth and Fourteenth Amendments to the United States Constitution by arresting Plaintiff without probable cause that a crime had been committed.

## COUNT II

### False Arrest Against Defendant Ashley

32. Paragraphs 1 through 31 are incorporated herein by reference as though fully set forth.

33. Defendant Ashley arrested Plaintiff before he could conduct a reasonable investigation into the competing claims of Plaintiff and Mr. and Mrs. Noble. Defendant Ashley arrested Plaintiff because he was frustrated that Plaintiff could not accede to his unreasonable demands to immediately have her son to operate the video surveillance system.

34. Accordingly Plaintiff's arrest was without probable cause and was made maliciously in violation of O.C.G.A. § 51-7-1.

## COUNT III

### False Imprisonment Against Defendant Ashley

35. Paragraphs 1 through 34 are incorporated herein by reference as though fully set forth.

36. Defendant Ashley arrested Plaintiff without probable cause that a crime had been committed.

37. Defendant Ashley's arrest of Plaintiff was undertaken in the clear absence of any exigent circumstances as enumerated under O.C.G.A. § 17-4-20(a).

38. As a result of her arrest, Plaintiff was transported to and incarcerated at the Gwinnett County Jail for more than 10 hours. Defendant's arrest of Plaintiff was therefore unlawful and resulted in the deprivation of Plaintiff's personal liberty in violation of O.C.G.A. § 51-7-20.

## Prayer for Relief

**WHEREFORE**, Plaintiff prays that she has a jury trial on all issues and that this Court award the following relief from Defendant:

a. Compensatory damages in an amount to be determined by a jury; and,

b. Punitive damages in an amount to be determined by a jury;

c. Whatever other damages or costs are recoverable under federal law including attorney's fees, costs of the litigation, and prejudgment interest; and

d. Such other relief that this Court deems just and proper.

Dated this ____ day of _____ 2010.

s/ Albert Wan
Bar Number: 334224
Attorney for Plaintiff
Albert Wan, Attorney at Law
1201 Peachtree Street NE
400 Colony Square, Suite 200
Atlanta, Georgia 30361
(404) 872-7760 – Tel.
(404) 872-7764 - Fax
albert@albertwanlaw.com - Email