IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DRUPATTY JAIPERSAUD, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> TIMOTHY R. ASHLEY, in his ) <br> individual capacity ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No. <br> 10-CV-455-JEC |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

COMES NOW, plaintiff Drupatty Jaipersaud, by and through counsel, and pursuant to Local Rule 56.1.B(1) files this statement of materials facts as to which there is no genuine issue to be tried. In support of her motion for partial summary judgment on liability as to her federal, Fourth Amendment claim against Timothy Ashley, plaintiff proffers the following:

1.  Drupatty Jaipersaud is the owner of a Chevron gas station in Lawrenceville, Georgia. (Jaipersaud Dep. 10; Ashley Dep. 83; D. Jaipersaud Decl. ¶ 9.)[1]

---

[1] "Jaipersaud Dep." refers to the deposition of plaintiff, Ms. Drupatty Jaipersaud, conducted on July 27, 2010; "Ashley Dep." refers to the deposition of defendant, Timothy Ashley,

2. This gas station consists of a convenience store in addition to the area containing the gas pumps. (Jaipersaud Dep. 11; D. Jaipersaud Decl. ¶ 9.)

3. During the afternoon of September 24, 2008, both Ms. Jaipersaud and her husband, Arnold Jaipersaud, were working inside the gas station convenience store. (Jaipersaud Dep. 26; D. Jaipersaud Decl. ¶ 17; A. Jaipersaud Decl. ¶ 2.)

4. A region-wide gas shortage was in effect at this time. (D. Jaipersaud Dep. 24; D. Jaipersaud Decl. ¶ 17; A. Jaipersaud Decl. ¶ 3.)

5. A true and correct copy of a WSBTV.com news article, dated September 24, 2008, discussing the effects of this gas shortage is attached hereto as SMF Attachment "A".

6. Ms. Jaipersaud's gas station was affected by this gas shortage and had exhausted its supply of unleaded gas on September 24, 2008. (Jaipersaud Dep. 24; A. Jaipersaud Decl. ¶ 3.)

7. As a result, Ms. Jaipersaud turned off all the unleaded gas pumps on that day. (D. Jaipersaud Decl. ¶ 22; A. Jaipersaud Decl. ¶ 3.)

---

conducted on December 13, 2010; "D. Jaipersaud Decl." refers to the sworn declaration of plaintiff, Drupatty Jaipersaud; "A. Jaipersaud Decl." refers to the sworn declaration of plaintiff's husband, Mr. Arnold Jaipersaud; "Narain Decl." refers to the declaration of Mr. Leslie Narain, plaintiff's son; and "Alvarado Decl." refers to the declaration of Mr. Ramon Alvarado, Esq., plaintiff's former attorney.

8. Attached hereto as SMF Attachment "B" is a copy of the surveillance video recorded at plaintiff's gas station on Sept. 24, 2008.[2]

9. This video, SMF Attachment "B," has been authenticated through the declarations of Mr. Leslie Narain and Mr. Ramon Alvarado, Esq. (*See generally* Narain Decl. ¶¶ 1-21; Alvarado Decl. ¶¶ 1-11; *see also* Ashley Dep. 126-33 (Ashley shown and questioned about surveillance video [SMF Attachment "B"]).)

10. From inside the convenience store, Ms. Jaipersaud saw a black male drive up to one of the unleaded gas pumps in an attempt to purchase gas. (D. Jaipersaud Decl. ¶ 23; SMF Attachment "B" [9/24/2008 video at 23:19 to 23:43 [*back view* at 12:35:15 to 12:36:00], 44:41 to 45:06 [*outside view* at 12:35:15 to 12:36:00]].)

11. When this individual could not complete his gas purchase, he entered the store in an angry and irate state. (Jaipersaud Dep. 24; A. Jaipersaud Decl. ¶ 5;

---

[2] This DVD surveillance video consists of recordings from three distinct camera views: the interior breezeway at the store's front entrance with an actual playing time of 00:00 to 20:33 [hereafter "*front view*"]; the cash register area located in the back of the store with an actual playing time of 20:33 to 41:50 [hereafter "*back view*"]; and the exterior area containing the gas pumps with an actual playing time of 41:50 to 1:03:40 [hereafter "*outside view*"]. They are presented in the video in the same order as they are listed here. The surveillance video contains its own time stamp corresponding to the actual time of the incident, with each view capturing the approximate time period of 12:30:06 to 13:24:55. As explained in the Declaration of Leslie Narain, these time stamps are one-hour behind the actual times because the video surveillance machine was not adjusted to reflect the changeover to daylight savings time. (Narain Decl. ¶ 19).

D. Jaipersaud Decl. ¶ 27; SMF Attachment "B" [9/24/2008 video at 45:10 to 45:20 [*outside view* at 12:36:08 to 12:36:26]].)

12. This individual's name was Mr. Leon Noble. (Ashley Dep. 66; D. Jaipersaud Decl. ¶ 27; A. Jaipersaud Decl. ¶ 4; Summary Report by Detective Ashley, Case # 080909060 (Bates stamped: Jaipersaud – 69-70), identified as Pl.'s Ex. 11 at Ashley Dep. 82 and attached hereto as SMF Attachment "C".)

13. Once inside the store, Mr. Noble began arguing with the plaintiff and her husband. (Jaipersaud Dep. 24-25; A. Jaipersaud Decl. ¶¶ 5-8; D. Jaipersaud Decl. ¶¶ 27-32; SMF Attachment "B" [9/24/2008 video at 3:35 to 3:45 [*front view* at 12:37:14 to 12:37:34], 24:05 to 24:20 [*back view* at 12:26:40 to 12:37:11]].)

14. Ms. Jaipersaud and her husband tried to get Mr. Noble to leave their store. (Jaipersaud Dep. 26; D. Jaipersaud Decl. ¶¶ 32-33; A. Jaipersaud Decl. ¶ 12; SMF Attachment "B" [9/24/2008 video at 3:52 to 4:05 [*front view* at 12:37:48 to 12:38:15]].)

15. Mr. Noble's wife, Ms. Nathalie Noble, ran into the store and began yelling at both Ms. Jaipersaud and her husband. (Jaipersaud Dep. 28; A. Jaipersaud Decl. ¶ 8; D. Jaipersaud Decl. ¶ 33; SMF Attachment "B" [9/24/2008 video at 4:10 [*front view* at 12:38:23]].)

16. Both Mr. and Mrs. Noble refused to leave plaintiff's establishment despite continued pleas by Mr. Jaipersaud that they do so. (Jaipersaud Dep. 27; A. Jaipersaud ¶ 12; SMF Attachment "B" [9/24/2008 video at 4:14 to 4:39 [*front view* at 12:38:30 to 12:39:21]].)

17. At no time during Ms. Jaipersaud's exchange with Mr. Noble, and then with Mrs. Noble, did she touch or hit either of the two parties. (Ashley Dep. 66-67; Jaipersaud Dep. 26-27; D. Jaipersaud Decl. ¶ 43; A. Jaipersaud Decl. ¶ 16; SMF Attachment "B" [9/24/2008 video at 3:35 to 7:31 [*front view* at 12:37:13 to 12:45:02]].)

18. Ms. Jaipersaud retreated behind the cash register counter and called 911. (SMF Attachment "B" [9/24/2008 video at 4:11 to 4:12 [*front view* at 12:38:26 to 12:38:27], 25:04 to 25:45 [*back view* at 12:38:21 to 12:39:45]]; D. Jaipersaud Decl. ¶ 40; A. Jaipersaud Decl. ¶ 11.)

19. A true and correct copy of a CAD Operations Report for a 911 call placed by Ms. Jaipersaud to the Lawrenceville Police Department on September 24, 2008 at 13:44:23 hours is attached hereto as Attachment "D".

20. This CAD Operations Report was introduced and identified at the Ashley's deposition as Plaintiff's Exhibit 12. (Ashley Dep. 101-08.) The CAD Operations Report indicates the caller name as "Anne Jaiterseud." (SMF

Attachment "D"; *see also* Ashley Dep. 102.) This information was available to one or more of the responding officers. (Ashley Dep. 103:11-18.)

21. Officer Ron Cone and Defendant Timothy Ashley responded to plaintiff's store after Ms. Jaipersaud called 911. (Ashley Dep. 49, 127; SMF Attachment "D" [CAD Operations Report].)

22. The Nobles were standing outside, in front of the store's front entrance, when Officer Cone and Defendant Ashley first responded. (Ashley Dep. 49; Jaipersaud Dep. 31; SMF Attachment "B" [9/24/2008 video at 7:30 to 7:43 [*front view* at 12:45:00 to 12:45:28]].)

23. Officer Cone and Defendant Ashley first spoke to the Nobles. (Ashley Dep. 49-50; Jaipersaud Dep. 31; D. Jaipersaud Decl. ¶¶ 44-45; A. Jaipersaud Decl. ¶ 14.)

24. Mr. Noble complained to Officer Cone and Defendant Ashley that Ms. Jaipersaud had called him a "nigger" and had hit him on his arm during his encounter with Ms. Jaipersaud. (Ashley Dep. 50; SMF Attachment "C" [Det. Ashley Summary Report, Jaipersaud – 69].)

25. Officer Cone and Defendant Ashley went inside the store and spoke to both Ms. Jaipersaud and her husband. (SMF Attachment "C" [9/24/2008 video at

6

8:07 [*front view* at 12:46:15], 8:18 [*front view* at 12:46:37]]; Ashley Dep. 51; Jaipersaud Dep. 31; D. Jaipersaud Decl. ¶¶ 46-48; A. Jaipersaud Decl. ¶¶ 14-16.)

26. Ms. Jaipersaud stated that it was Mr. Noble who had started the altercation and insisted that she did not touch or hit Mr. Noble during her encounter with him. (Ashley Dep. 51, 83; D. Jaipersaud Decl. ¶ 50.)

27. Both Ms. Jaipersaud and Mr. Jaipersaud suggested to Defendant Ashley that he view the surveillance video recording from earlier in the day. (Jaipersaud Dep. 38, 46; D. Jaipersaud Decl. ¶ 51; A. Jaipersaud Decl. ¶ 19.)

28. The video surveillance system was located in a small room in the back of the store. (Ashley Dep. 51; D. Jaipersaud Decl. ¶ 53; *see also* Exhibit "C" attached to D. Jaipersaud Decl. [photo of back room containing video surveillance equipment].)

29. Ms. Jaipersaud never prevented Defendant Ashley or any other police officer from accessing the video surveillance system. (Ashley Dep. 93; Jaipersaud Dep. 38-39; D. Jaipersaud Decl. ¶¶ 53-54; A. Jaipersaud Decl. ¶ 21.)

30. Defendant Ashley testified in his deposition as follows: "Q: And Ann [Ms. Jaipersaud] never prevented you from accessing the video machine? A: No." (Ashley Dep. 93:22-24.)

31. Defendant Ashley further testified in his deposition as follows:

> Q: Did either Ms. Jaipersaud or her husband at any point during your investigation prevent you from accessing the machine?
> A: Accessing the –
> Q: The video machine.
> A: No, no, absolutely not. No, she allowed us to go back and look at it.

(Ashley Dep. 165:1-7.)

32. Ms. Jaipersaud told Defendant Ashley that neither she nor her husband knew how to operate the video surveillance machine. (Ashley Dep. 52, 91; Jaipersaud Dep. 39; D. Jaipersaud Decl. ¶ 52; A. Jaipersaud Decl. ¶ 20.)

33. Ms. Jaipersaud then provided Defendant Ashley and another police officer, Officer Wiernik, with the operating manual and her password for accessing the video surveillance machine. (Jaipersaud Dep. 39; D. Jaipersaud Decl. ¶ 52; A. Jaipersaud Decl. ¶ 20; *see also* Ashley Dep. 127 (identifying Officer Wiernik from surveillance video); SMF Attachment "B" [9/24/2008 video at 8:18 to 8:22 [*front view* at 12:46:35 to 12:46:44].

34. Neither Defendant Ashley nor Officer Wiernik succeeded in figuring out how to operate the video surveillance machine. (Ashley Dep. 51; Jaipersaud Dep. 39; D. Jaipersaud Decl. ¶ 56.)

35. A visibly angry Defendant Ashley asked Ms. Jaipersaud what she usually did to operate the video surveillance machine. (Jaipersaud Dep. 38-39; Ashley Dep. 51-52.)

36. Ms. Jaipersaud explained to Defendant Ashley that she generally asked her son to assist her in operating the video surveillance machine. (Ashley Dep. 52; Jaipersaud Dep. 39; D. Jaipersaud Decl. ¶ 57.)

37. Defendant Ashley ordered Ms. Jaipersaud to get her son to the store at once. (Jaipersaud Dep. 39; D. Jaipersaud Decl. ¶ 58; A. Jaipersaud Decl. ¶¶ 23-24.)

38. Ms. Jaipersaud informed Ashley that her son was attending classes at that time at Clayton State University ("Clayton State"). (Ashley Dep. 120, 168; Jaipersaud Dep. 39.)

39. Ms. Jaipersaud also informed Defendant Ashley that Clayton State was over an hour away from the gas station. (Ashley Dep. 120, 168; Jaipersaud Dep. 39.)

40. Defendant Ashley himself knew how far Clayton State was from the gas station. (Ashley Dep. 75, 93:19-22 ("Q: And she told you that Clayton State or you knew yourself that Clayton State was over an hour away from the store? A: Yes").)

41. Defendant Ashley still insisted that Ms. Jaipersaud get her son to the store immediately. (Jaipersaud Dep. 39; D. Jaipersaud Decl. ¶ 59; A. Jaipersaud ¶ 24.)

42. Ms. Jaipersaud placed a call to her son in Ashley's presence using her cell phone but could not reach him. (Ashley Dep 74; Jaipersaud Dep. 39; SMF Attachment "B" [9/24/2008 video at 34:40 to 34:43 [*back view* at 12:58:15 to 12:58:21]].)

43. A true and correct copy of a Sprint call log for phone number (678) 984-5119 covering the period from September 9, 2008 to October 8, 2008 is attached hereto as SMF Attachment "E".

44. (678) 984-5119 was the phone number for Ms. Jaipersaud's cell phone at the time of the incident. (D. Jaipersaud Decl. ¶ 60.)

45. Ms. Jaipersaud's son, Leslie Narain, owned a cell phone at the time of Ms. Jaipersaud's arrest. (Narain Decl. ¶ 6.)

46. The phone number for Leslie Narain's cell phone was (678) 749-2786. (*Id*. ¶ 6.)

47. The Sprint call log for phone number (678) 984-5119 indicates that an outgoing call was placed to phone number (678) 749-2786 at 2:01 p.m. on September 24, 2008. (SMF Attachment "E" [Sprint Call Log].)

48. Ms. Jaipersaud informed Defendant Ashley that she had called but was unable to get through to her son. (Ashley Dep. 120; Jaipersaud Dep. 39.)

49. Defendant Ashley continued to demand that Ms. Jaipersaud produce her son at the store immediately. (Jaipersaud Dep. 39.)

50. Defendant Ashley testified as follows at Ms. Jaipersaud's criminal trial relating to the incident at issue:

> Q: Now, when you asked her [Ms. Jaipersaud] to show you the video she told you flat out she doesn't know how to use that machine; correct?
> A: Yes.
> Q: And she tells you he's at school?
> A: Yes.
> Q: Now, with you there she attempts to call her son; right?
> A: I believe she may have attempted to call him one time. But she did not make contact with him.
> Q: And that very well could be because he is, in fact, in school; right?
> A: Could be.
> Q: Now, she told you that he went to Clayton State, which is an hour away?
> A: Correct.
> Q: And you still insisted on bringing him there immediately?
> A: I did.

State v. Jaipersaud, Case No. 08-D-8932-6, Trial Tr. 62:18-63:13, Feb. 24-25, 2009 [hereafter "State v. Jaipersaud, Trial Tr."].

51. A certified copy of the transcript in State v. Drupatty Jaipersaud, Case No. 08-D-8932-6, Gwinnett County State Court, is attached hereto as SMF Attachment "F".

52. A portion of this transcript, containing the entirety of Mr. Ashley's testimony in the trial of State v. Drupatty Jaipersaud, Case No. 08-D-8932-6 (*see generally* State v. Jaipersaud, Trial Tr. 50-67) was introduced in Ashley's

deposition as Plaintiff's Exhibit 9 (*see* Ashley Dep. 59), and is attached hereto as SMF Attachment "G".

53. Defendant Ashley was given an opportunity during his deposition to review Plaintiff's Exhibit 9 [SMF Attachment "G"] in its entirety. (Ashley Dep. 59-60.)

54. Defendant Ashley verified the accuracy of all of the statements attributed to him in Plaintiff's Exhibit 9 [SMF Attachment "G"]. (Ashley Dep. 60-61.)

55. Ms. Jaipersaud complained to Defendant Ashley that he was making unreasonable demands on her. (Ashley Dep. 53; Jaipersaud Dep. 39; D. Jaipersaud Decl. ¶ 64; A. Jaipersaud Decl. ¶ 26.)

56. Ms. Jaipersaud testified in her deposition as follows:

A: And Detective Ashley at that point told me, I need to get him on the phone or get him here.
So I tried calling him. I tell him, he's in class, he don't answer his phone. I did call, and he didn't answer.
At that time Detective Ashley said, well, you need to get him here or else.
I asked him, sir, what are you saying? He said, I'm not saying anything. You need to get your son here.

(Jaipersaud Dep. 39:15-25.)

57. Defendant Ashley acted in an aggressive manner toward Ms. Jaipersaud as she voiced her disagreement with Ashley's commands. (State v. Jaipersaud, Trial Tr. 63-64.)

58. Ashley testified as follows in Ms. Jaipersaud's criminal trial relating to the incident at issue:

> Q: Well, let's talk about the moments before you arrest her. Did you ever get aggressive with her?
> A: How do you mean aggressive?
> Q: Let's break it down. Did you ever stick your finger in her face?
> A: Not in her face, no. She was across the room.
> Q: So if on the video we have you sticking your finger in her face, the video may be wrong?
> A: I wouldn't say the video would be wrong, no.
> Q: Then you might be wrong?
> A: If pointed my finger at her I did not point my finger in her face. I may have pointed my finger at her.
> Q: Let's break this down.
> A: Okay.
> Q: Let's break this down. At some point she's standing 2 or 3 feet away from you and you have your finger pointed in her face?
> A: That could have been, yes, sir.
> Q: At some point are you raising your voice to her as you have your finger in her face?
> A: When she told me she would not contact her son and that I would not tell her what to do in her own business, I told her that I would complete this investigation. And I may have said that in a strong voice, yes, sir.

(State v. Jaipersaud, Trial Tr. 63:18-64:16. *See also* SMF Attachment "B" [9/24/2008 video at 34:40 to 34:48 [*back view* at 12:58:15 to 12:58:31]].)

59. Defendant Ashley then grabbed Ms. Jaipersaud by her upper arm and pulled her out of the store. (SMF Attachment "B" [9/24/2008 video at 13:50 to

13

13:52 [*front view* at 12:59:10 to 12:59:14]]; Ashley Dep. 128; Jaipersaud Dep. 40; D. Jaipersaud Decl. ¶ 65; A. Jaipersaud Decl. ¶ 26.)

60. Ms. Jaipersaud was in-custody at this point in time. (Ashley Dep. 128; Jaipersaud Dep. 40-41.)

61. Once outside the store, Ms. Jaipersaud was handcuffed and placed in the back of a patrol car. (Ashley Dep. 54-55; Jaipersaud Dep. 48.)

62. Defendant Ashley charged Ms. Jaipersaud with disorderly conduct. (Ashley Dep. 54; Jaipersaud Dep. 47.)

63. Defendant Ashley issued Ms. Jaipersaud a citation, citing subsections (c) and (k) of the disorderly conduct provision of the City of Lawrenceville Municipal Code. (Ashley Dep. 61-62.)

64. A copy of this citation was introduced at Defendant Ashley's deposition as Plaintiff's Exhibit 10 (Bates stamped: Jaipersaud – 68) (*see* Ashley Dep. 61-62), and is attached hereto as SMF Attachment "H".

65. The citation was the "first legal document" completed by Defendant Ashley in relation to his arrest of Ms. Jaipersaud. (Ashley Dep. 64.)

66. Defendant Ashley noted on the citation that Ms. Jaipersaud had "struck patron while conducting business then refused to cooperate w/ police." (SMF Attachment "H" [Citation].)

67. By "patron," Defendant Ashley was referring to Mr. Noble. (Ashley Dep. 66.)

68. At no time on September 24, 2008, did any officer, including Ashley, observe Ms. Jaipersaud strike Mr. Noble. (*Id.* at 66.)

69. At no time on September 24, 2008, did any officer, including Ashley, hear Ms. Jaipersaud call Mr. Noble a "nigger" or any other discriminatory remark. (*Id.* at 81.)

70. At no time during the investigation did Ms. Jaipersaud ever admit to any officer, including Ashley, that she had hit Mr. Noble. (*Id*. at 83.)

71. At no time during the investigation did Ms. Jaipersaud ever prevent any officer, including Ashley, from accessing the video surveillance machine. (*Id.* at 164-65.)

72. At no time during the investigation did Ms. Jaipersaud ever curse at Defendant Ashley. (*Id.* at 72-73.)

73. At no time during the investigation did Ms. Jaipersaud ever verbally or physically threaten Defendant Ashley. (*Id*. at 72.)

74. At no time during the investigation did Ms. Jaipersaud ever place her hands on Defendant Ashley. (*Id*. at 73.)

75. At no time during the investigation did Defendant Ashley feel threatened by Ms. Jaipersaud's conduct. (*Id.* at 94.)

76. Defendant Ashley testified as follows in Ms. Jaipersaud's criminal trial concerning the incident at issue:

> Q: How tall are you, Officer?
> A: 6-2.
> Q: 6-2. How much do you weight?
> A: 245.
> Q: Were you scared of Ms. Jaipersaud that day?
> A: I'm sorry?
> Q: Were you scared of her that day?
> A: No.
> Q: At no point were you placed in reasonable fear of your life or limb?
> A: I wasn't afraid for my life if that's what you meant.
> Q: How about your safety: Were you afraid she was going to hurt you?
> A: She might have hit me.
> Q: She might have hit you?
> A: She could have hit me, sure.
> Q: She didn't, did she?
> A: No, she didn't.

(State v. Jaipersaud, Trial Tr. 66:7-24.)

77. At the time of Ms. Jaipersaud's arrest, Defendant Ashley had knowledge of no facts that would have supported an arrest for an offense other than disorderly conduct. (Ashley Dep. 165.)

78. Defendant Ashley testified in his deposition as follows:

> Q: At the time you arrested Ms. Jaipersaud, did you have in your knowledge --- with the facts that you knew at that point when you arrested

16

>     her, did you have any probable cause to arrest her for any other offense at
>     that point?
> A:  Other than –
> Q:  Other than the disorderly conduct.
> A:  Other than the charges I brought against her, no.

(*Id.* at 165:17-25.)

79. Officer Wiernik and Defendant Ashley spent approximately six (6) minutes attempting to operate the video surveillance machine before Ms. Jaipersaud was arrested. SMF Attachment "B" [9/24/2008 video at 11:21 to 13:50 [*front view* at 12:52:40 to 12:59:10], 33:07 to 34:56 [*back view* at 12:53:28 to 12:59:06]].)

80. The entire investigation, starting from when the first officer arrived at Ms. Jaipersaud's gas station and ending when Defendant Ashley arrested Ms. Jaipersaud, lasted approximately 13 minutes. (*Id.* at 07:38 to 13:50 [*front view* at 12:45:18 to 12:59:10]].)

81. No police officer, including Ashley, stayed at the gas station after plaintiff was arrested, to wait for plaintiff's son to return from school. (Ashley Dep. 76.)

82. No police officer, including Defendant Ashley, ever returned to Ms. Jaipersaud's store to obtain or view the video surveillance tape at issue. (Ashley Dep. 76; Jaipersaud Dep. 52.)

83. Ashley could have returned to plaintiff's store to view the surveillance video but did not do so. (Ashley Dep. 121.)

84. Ashley testified in his deposition as follows:

Q: Did [Ms. Jaipersaud] deny you permission to come back or for you to send somebody else to come back to retrieve the video?
A: She didn't deny it because I didn't ask.
Q: You didn't ask?
A: Okay, I'll come back tomorrow and see it.
Q: Did you need her permission?
A: No. Need her permission to come back? I don't need her permission; but if I come back tomorrow and she's not expecting me, why would she have the videotape available then?
Q: Well, I mean, could you have called ahead and said, I want to come to view the video and make your son available?
A: Sure, I could have done that.

(Ashley Dep. 121:7-21.)

85. As a result of her arrest by Defendant Ashley, Ms. Jaipersaud was incarcerated at the Gwinnett County Detention Center for approximately 9 hours. (Jaipersaud Dep. 54; D. Jaipersaud Decl. ¶ 79.)

86. A certified copy of the accusation in State v. Drupatty Jaipersaud, Case Number 08-D-8932-6, Gwinnett County State Court, is attached hereto as SMF Attachment "I".

87. This accusation charged Ms. Jaipersaud with having violated the offenses of disorderly conduct, under O.C.G.A. § 16-11-39(a)(1), and simple battery, under O.C.G.A. § 16-5-23(a)(1). (SMF Attachment "I" [Accusation].)

88. Ms. Jaipersaud went to trial before a jury in Gwinnett County State Court on both of these charges. (Jaipersaud Dep. 17.)

89. The jury acquitted Ms. Jaipersaud of both charges. (Jaipersaud Dep. 17; Ashley Dep. 80.)

90. A certified copy of the final disposition in State v. Drupatty Jaipersaud, Case Number 08-D-8932-6, is attached hereto as SMF Attachment "J".

Respectfully submitted this 3rd day of March 2011.

/s/ Albert Wan
Georgia Bar No. 334224
albert@albertwanlaw.com
Attorney for Plaintiff

1201 Peachtree Street
400 Colony Square, Suite 200
Atlanta, GA 30361
404-872-7760 – Tel.
404-872-7764 – Fax

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2011, I electronically filed the attached with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Kendrick K. McWilliams, Esq.
Attorney for Defendants
Shivers & Associates
Caller Service No. 1808
Alpharetta, GA 30023-1808
678-317-7104 – Tel.
678-317-8917 – Fax
kmcwilli@travelers.com – Email

/s/ Albert Wan
Georgia Bar No. 334224
Attorney for Plaintiff

1201 Peachtree Street
400 Colony Square, Suite 200
Atlanta, GA 30361
404-872-7760 – Tel.
404-872-7764 – Fax
albert@albertwanlaw.com – Email