# IN THE UNITED STATES DISTRICT COURT
## IN THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

DRUPATTY JAIPERSAUD,

     Plaintiff,

vs.

TIMOTHY R. ASHLEY, in his
individual capacity,

     Defendant.

CIVIL ACTION FILE NO.

NO. 1:10-CV-0455-JEC

## DEFENDANT TIMOTHY R. ASHLEY'S BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

COMES NOW, Detective Timothy R. Ashley ("Ashley"), Defendant in the above-styled civil action, and files this memorandum of law in support of his motion for summary judgment. For the reasons set forth below, the Defendant is entitled to judgment in his favor and this motion should be granted.

## STATEMENT OF FACTS

The Plaintiff brought this action for false arrest because she believes that Detective Ashley violated her Fourth and Fourteenth Amendment right when he seized her without probable cause.

On September 24, 2008 the Lawrenceville Police Department dispatched units to respond to a call regarding a fight in progress at the Chevron gas station located at 256 Hurricane Shoals Road.

Plaintiff was the owner of the establishment located at 256 Hurricane Shoals Road. Detective Timothy R. Ashley approached the scene at the same time as Officer R. Cone. Upon Detective Ashley's arrival, a couple approached his vehicle. Mr. Leon Noble and Mrs. Nathalie Noble, who proceeded to inform Detective Ashley that as they attempted to purchase gas, the pump flashed a message that they needed to see the clerk inside. Mr. Noble went inside to speak with the clerk, who was also the owner of the establishment, Plaintiff Drupatty Jaipersaud. The Plaintiff informed Mr. Noble that they were out of gas. Mr. Noble suggested that they place a sign near the pump or a bag over the pumps location so that people would know that there was no gas available. The Plaintiff and Mr. Noble began to have a verbal exchange in which they both began swearing at one another. The Plaintiff then approached Mr. Noble and slapped him on or about the hand and wrist area. Mrs. Noble informed the officers that she saw her husband backing away towards the door during the encounter with the Plaintiff.

The Lawrenceville Police Officers arrived at the location a minute to a minute and a half after the Plaintiff had initiated her call to the police. While other officers were outside of the location interviewing the Nobles, one officer from the Lawrenceville Police Department came into the store location to speak with the Plaintiff.

After conducting his initial interview with the Nobles, Detective Ashley then went inside to speak with the Plaintiff and her husband. The Plaintiff informed Detective Ashley that she had done nothing wrong. Officer Cone then advised Detective Ashley that he had been out to this location on several calls regarding customer complaints that the Plaintiff had previously shouted racist comments at the customers and called the customers racist names. This call was at least the third time that Officer Cone remembers having to respond to the location as a result of a patron complaining that they had been allegedly assaulted by the Plaintiff. On all three occasions that customers stayed outside and waited for the police to respond to the scene. On all three occasions the patrons complained that the clerk (Plaintiff) used racially derogatory terms towards them. On the prior calls the Plaintiff informed Officer Cone that he would be unable to view the videotape for reasons the officer could not recall.

The Plaintiff then stated it was Mr. Noble who had been yelling and called her and her husband "coolie". The remark is an apparent racist slang term used in Guyana for someone of Indian (Asian) decent. The Plaintiff insisted that the video would show that she was telling the truth. Detective Ashley asked the Plaintiff to show him the video coverage for the past several minutes. The Plaintiff informed Detective Ashley that she could not pull the video up. Officer Wiemik attempted to work the video machine but was unsuccessful. The Plaintiff was asked how the machine could be accessed. She stated that her son knew how to operate the machine. Detective Ashley asked the Plaintiff to call her son and have him in route to the location. The Plaintiff became very upset and expressed to Detective Ashley that he could not come into her place of business and tell her what to do. The Plaintiff then walked up to Detective Ashley in an offensive manner, shouting and waving her hands.

Detective Ashley placed the Plaintiff under arrest for Disorderly Conduct and placed her in the back of Officer Carrier's patrol car. The Plaintiff was also later cited for Simple Battery. After Detective Ashley obtained the Plaintiff's information and wrote the citation, the Plaintiff informed Detective Ashley that she needed to use the restroom. Detective Ashley took the Plaintiff out of the

patrol vehicle and escorted her inside to the bathroom and removed the handcuffs. The Plaintiff used the bathroom and then asked to use the telephone. Detective Ashley informed the Plaintiff that she would be allowed to use the phone at the jail. Detective Ashley again cuffed the Plaintiff, double locking the cuffs, and placed her back in Officer Carrier's patrol vehicle without incident.

Plaintiff brought this claim against the Defendant for his actions in making the arrest after the incident described above. Plaintiff was found not guilty on both the Disorderly Conduct and Simple Batter Charges.

For the reasons stated above, Plaintiff has failed to state a claim upon which relief can be granted; and the Defendant denies the entirety of Plaintiff's charged offenses including, but not limited to, false arrest and false imprisonment. Plaintiff has no evidence that Detective Ashley acted with malice toward her.

As a result of the aforementioned Statement of Undisputed Material Facts, the Plaintiff's cause of action has no merit and should be dismissed against Defendant with prejudice.

## ARGUMENTS AND CITATIONS TO AUTHORITY

### I. THE DOCTRINE OF QUALIFIED IMMUNITY PROTECTS DETECTIVE TIMOTHY ASHLEY FROM ALL FEDERAL CLAIMS

Government officials performing discretionary functions within the scope of their employment are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). Where an officer can show that he held an objectively reasonable belief that his actions were lawful, he will be immune from suit alleging a constitutional violation arising therefrom. Baker v. McCollan, 443 U.S. 137, 144; 99 S. Ct. 2689, 2694 (1979).

Based on the evidence in this case, it is clear that Ashley acted within his discretionary authority, and he reasonably concluded that probable cause existed for the Plaintiff's arrest as a result of her refusal to cooperate during a police investigation. See Saucier, 533 U.S. at 202; Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004); Lee v. Ferraro, 284 F.3d 118, 1194 (11th Cir. 2002). In the context of qualified immunity cases that turn on the presence or absence of probable cause, an official has not committed a clearly established constitutional violation if either actual or arguable probable cause existed. Lee, 284 F.3d at 1195 (emphasis added). Therefore, the Plaintiff must show two things: (1) that Ashley committed a constitutional violation and (2) that the constitutional right Ashley

violated was "clearly established" at the time of the alleged violation. <u>Crosby</u>, 394 F.3d at 1332.

## A. The Complaint Only Involves Fourth Amendment Allegations

The allegations in Plaintiff's Complaint against Ashley involve Ashley's arrest of the Plaintiff on the initial charge of disorderly conduct.

The Plaintiff has alleged substantive due process as a basis for recovery, but substantive due process is not applicable, because "the Fourth Amendment provides an explicit textual source of constitutional protection against this type of physically intrusive governmental conduct; that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims." <u>Graham v. Connor</u>, 490 U.S. 386, 395 & n. 10, 109 S. Ct. 1865, 1871 (1989). Finally, Plaintiff's Complaint fails to state an equal protection claim because Plaintiff does not allege that Ashley treated her differently than any similarly situated person based on an illegitimate classification. <u>See</u> <u>Draper v. Reynolds</u>, 369 F.3d at 1278. Defendant Ashley is therefore entitled to summary judgment on the above-referenced claims.

## B. Qualified Immunity Bars Plaintiff's Fourth Amendment Claim

### 1. **Plaintiff's Arrest was Lawful; Ashley Use of Force was Authorized**

An arrest made with probable cause constitutes an absolute bar to a § 1983 action for false arrest. Marx v. Gumbinner, 905 F.2d 1503, (11th Cir. 1990). Whether probable cause to arrest exists is based on "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." United States v. Smith, 799 F.2d. 709 (11th Cir. 1986); Ortega v. Christian, 85 F. 3d. 1521, 1525 (11th Cir. 1996). Probable cause to arrest "exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." Ortega, 85 F. 3d. at 1525. Of particular importance is the fact that O.C.G.A. § 17-4-20(a) specifically provides that an officer may make a warrantless arrest for crimes committed in his presence. See e.g. Polk v. State, 200 Ga. App. 17 (1981). In determining whether an arrest has been made upon proper probable cause, the intent or motive of the police officer in making the arrest is irrelevant. United States v. Holloman, 113 F.3d. 192 (11th Cir. 1997).

The existence of probable cause on the given facts is a question to be resolved by the court as a matter of law. United States v. Banshee, 91 F.3d. 99,

101 (11th Cir. 1996). Probable cause must be judged, "not with clinical detachment, but with a common sense view as to the realities of normal life." Marx v. Gumbinner, 905 F.3d. at 1506.

In the present case, because Detective Ashley had probable cause to arrest the Plaintiff; the "right to make an arrest or investigatory stop necessarily carries with it the right to 'use some degree of physical coercion or threat thereof to effect it.'" Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). Also, "[i]n a lawful arrest based upon probable cause, an officer has the right to use that force reasonably necessary to effect the arrest, and the defendant does not have the right to resist the use of such reasonable force." Long v. State, 261 Ga. App. 478, 479 (2003).

A determination of whether the force applied to affect the arrest was reasonable must begin with two presumptions: (1) Ashley was lawfully authorized to utilize force reasonably necessary to arrest Plaintiff; and (2) Plaintiff had no right to resist a lawful arrest.

### 2. Plaintiff's Excessive Force Claim

Defendant addresses the issue of excessive force, although not explicitly plead, there was implied within the Plaintiff's amended Complaint, elements

relevant to this issue. See generally, Plaintiff's Amended Complaint, Doc. 35, ¶18.

In cases alleging excessive use of force, the Fourth Amendment provides the exclusive basis for liability. Graham v. Connor, 490 U.S. 386 (1989). Under Fourth Amendment jurisprudence, the use of force is reviewed under a standard of objective reasonableness. Id. at 397. The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intention or motivation. Id. In determining whether the amount of force used by Ashley was excessive, the appropriate evaluation is "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." Beshers v. Harrison, 495 F.3d 1260, 1266 (11th Cir. 2007). To assess whether the force used by Ashley was reasonable, the Court examines: (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted. Draper v. Reynolds, 396 F.3d 1270, 1277-78 (11th Cir. 2004).

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather that with the 20/20 vision of hindsight. Graham, 490 U.S. at 396-97. The Fourth Amendment is not

violated by an arrest based on probable cause.  Hill v. California, 401 U.S. 797, 91

S. Ct. 1106 (1971).  In claims for excessive force, **"[n]ot every push or shove, even**

**if it may later seem unnecessary in the peace of a judge's chambers",** violates

the Fourth Amendment.  The calculus of reasonableness must embody allowance

for the fact that police officers are often forced to make split-second judgments –

in circumstances that are tense, uncertain, and rapidly evolving – about the

amount of force that is necessary in a particular situation.  Graham, 490 U.S. at

396-97 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (1973) (emphasis added).

The reasonableness of force applied is a legal question to be resolved by

the court.  O'Neal v. DeKalb County, 850 F.2d 653, 657, n.6 (11th Cir. 1988), citing

Tennessee v. Garner, 471 U.S. 1, 8, 105 S. Ct. 1696, 1699 (1985).

During the course of the Plaintiff's arrest she claims she developed a bruise

on her hand when Ashley grabbed her arm.  See Depo. Drupatty Jaipersaud

19:20-25 – 21:1-6.  The Plaintiff did not need, nor did she seek, medical treatment

for the alleged injuries caused during her arrest.  Id.  Other than the superficial

complaints of injury made by the Plaintiff, there is no proof that Ashley used

excessive force in arresting Plaintiff.

### 3.    No Clearly Established Constitutional Right Was Violated

Applying the principles above Ashley is entitled to Summary Judgment.

### a. *Force was necessary to affect the arrest*

Ashley was entitled to use some degree of force in making a valid arrest based on arguable probable cause. The need for the application of force is measured by weighing "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether [s]he is actively resisting arrestor attempting to evade arrest by flight." Davis v. Williams, 451 F.3d 759, 767 (11th Cir. 2006). "[S]ome use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003).

Ashley made the lawful arrest of Plaintiff, pursuant to his discretionary authority, on the charge of disorderly conduct. Accordingly, Ashley was entitled to use force to restrain Plaintiff. See Davis, 451 F.3d at 767.

### b. *Minimal force was used to affect the arrest*

Not every push and shove violates the Fourth Amendment. See, e.g., Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1983). The use of force involving some degree of rough contact with the arrestee may be appropriate, such as pushing, shoving, or using a knee or a chokehold. See Sullivan v. City of Pembroke Ashley, 161 Fed.Appx. 906, 910 (11th Cir. 2006) (finding *de minimis*

12

force, where officer "grabbed detainee's arm, pulled her arms behind her back, forced her to the ground, placed his knee on her back, and handcuffed her."); Nolin v. Isbell, 207 F.3d 1253, 1258, n. 4 (11th Cir. 2000) (officer grabbed the plaintiff, shoved him against a vehicle, pushed his knee into plaintiff's back, searched his groin in an uncomfortable manner, and handcuffed him); Jones v. City of Dothan, 121 F.3d 1456, 1460 (11th Cir. 1997) (two officers "slammed" suspect against a wall, kicked his legs apart, required him to raise his arms, and pulled his wallet from his pants); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1556 (11th Cir. 1993) (officer placed plaintiff in chokehold and handcuffed him, took him outside, and pushed him against a wall when he continued speaking after being told to "shut up").

In this case, the Plaintiff does not allege that Ashley kicked, punched, hit, scratched, used impact weapons, or otherwise applied excessive force upon her person. The Plaintiff's own testimony illustrates the only force applied to her by Ashley was him grabbing her arm during the course of her arrest. The force used by Ashley in making the lawful arrest of the Plaintiff was *de minimis*. Further, under the circumstances confronting Ashley at the time the arrest was

made, the force used was both reasonable and necessary, and it did not violate the Fourth Amendment.

### c. *Plaintiff's injuries were minor*

Plaintiff has no objective evidence that the nature and extent of her injuries were more than *de minimis*. "[T]he typical arrest involves some force and injury." Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002). Even if substantial injuries flow from *de minimis* force; it cannot support an excessive force claim. Rodriguez, 280 F.3d at 1351-52 (finding *de minimis* force in handcuff maneuver, even though handcuffing resulted in extensive surgery to claimant's arm, which ultimately required amputation below the elbow). Handcuff injuries are prototypical *de minimis* injuries, subject to summary judgment on that basis. Gold v. City of Miami, 121 F.3d 1442, 1446-47 (11th Cir. 1997) (holding injuries from handcuffing were *de minimis*).

The Plaintiff's chief complaint of injury stems from bruising to her hand following the incident. The available objective evidence reveals nothing more than *de minimis* injuries, caused by the lawful arrest of the Plaintiff that resulted in *de minimis* force being applied to her person to make the arrest, which included her being handcuffed. Therefore, Plaintiff's latent excessive force claim must be dismissed.

**4.    Ashley Did Not Violate Clearly Established Law**

Even if a case could have been made that Ashley violated Plaintiff's rights under the Fourth Amendment, he still would be entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary functions from civil trial (and the other burdens of litigation, including discovery) and from liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." Jenkins v. Talladega City Bd. of Ed., 115 F.3d 821, 823 (11th Cir. 1997)(en banc).

> For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors in the defendant's place, that 'what he is doing' violates federal law. For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.

Jenkins, 115 F.3d at 823.

Procedurally, the courts have established a two-pronged analysis for reviewing qualified immunity motions involving federal constitutional claims. First, Ashley must show that he was acting within his or her discretionary authority.  Once Ashley makes this showing, the burden then shifts to the

Plaintiff to come forward with evidence of the lack of good faith (i.e., violation of clearly established law) on Ashley's part. Lowe v. Aldridge, 958 F.2d 1565, 1570 (11th Cir. 1992). Plaintiff may not discharge this burden by referring to general rules and violations of abstract rights. Instead, she must point to specific case law, issued by the United States Supreme Court, Eleventh Circuit Court of Appeals, or the Georgia Supreme Court that sets forth a standard of conduct that would lead every reasonable officer in Ashley's position to conclude his arrest and use of force was unlawful. Flores v. Satz, 137 F.3d 1275, 1278 (11th Cir. 1998).

Plaintiff simply cannot meet this burden. Indeed, the law is clearly established that where, as here, there is nothing more than the application of *de minimis* force, this will not support a claim for excessive force in violation of the Fourth Amendment. Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000). There is no case law to support that a lawful arrest made, pursuant to an officers discretionary authority, using *de minimis* force in order to achieve the arrest was excessive force under the totality of the circumstances.

Using Plaintiff's own version of the facts, there is insufficient evidence, as a matter of law, to support a claim under the Fourth Amendment. Accordingly,

there is no basis for liability to be imposed on Detective Ashley for excessive force.

## II. OFFICIAL IMMUNITY BARS PLAINTIFF'S STATE LAW CLAIMS

The Georgia Constitution specifically provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are willful, wanton, or outside the scope of his authority. The Plaintiff's Complaint asserts claims under state law against Ashley arising from her arrest on September 24, 2008, including false arrest, false imprisonment, latent complaints for excessive force and unarticulated claims under the Georgia Constitution. See Complaint at Count 1.

Official Immunity bars state law clams against a public officer carrying out a discretionary function, unless the officer acts with actual malice. See Ga. Const. of 1983, Art. I, Sec. 2, Par 9 (d). Plaintiff's state law claims flow from an incident involving Ashley' arrest of the Plaintiff. Under Georgia law the use of force by officers is discretionary as a matter of law. See, e.g., Kidd v. Coates, 271 Ga. 33, 518 S.E. 2d 124 (1999); Gilbert v. Richardson, 264 Ga. 744, 747, 452 S.E. 2d 476 (1994); Woodward v. Gray, 241 Ga. App. 847, 527 S.E.2d 595 (2000).

Therefore, if there is no evidence of actual malice, official immunity applies. Actual malice within the realm of official immunity means a deliberate intention to commit a wrongful or illegal act. Adams v. Hazelwood, 271 Ga. 414, 414-15, 520 S.E.2d 896 (1999). Plaintiff must show actual malice in order to erode the protections provide Ashley under the official immunity afforded him under the Georgia Constitution. Implied malice will not suffice. Murphy v. Bajjani, 282 Ga. 197, 203, 647 S.E.2d 54 (2007).

Here, the Plaintiff has no reason to believe that Ashley wished to harm her. The Plaintiff has no evidence of "actual malice", and official immunity protects Defendant Ashley from Plaintiff's state law claims.

## III.   PLAINTIFF'S STATE LAW CLAIMS FAIL ON THE MERITS

Plaintiff's Complaint alleges false arrest and false imprisonment against Ashley. Under Georgia law, abuses of process torts are mutually exclusive – only one is available in any given case. Reese v. Clayton County, 185 Ga. App. 207, 208, 363 S.E.2d 618 (1987).

The Plaintiff's false arrest claim fails for lack of malice. "Malice consists of personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured." O.C.G.A. § 51-7-2. Plaintiff has presented no evidence that Ashley acted with malice. Under Georgia law,

the 'malice' element is negated where there appears to be a legitimate ground for arrest.  See, e.g., Stanford v. City of Manchester, 246 Ga. App. 129, 131, 539 S.E.2d 845 (2000).

Ashley is entitled to summary judgment on Plaintiff's false arrest and false imprisonment claims.

Finally, a defendant can only be liable for battery where there actions of touching the plaintiff were unlawful.  O.C.G.A. § 51-1-13.  Here, Ashley was a peace officer employed with Lawrenceville Police Department, authorized to lawfully arrest a suspect, pursuant to his discretionary authority.  In order to achieve the lawful arrest, he was authorized, and required, to touch the Plaintiff in order to complete the lawful arrest in this case.  Therefore, since Ashley was authorized to touch the Plaintiff, any battery claim is barred against these Defendants.  Touchton v. Bramble, 284 Ga. App. 164, 643 S.E.2d 541, 544(b) (2007).

## CONCLUSION

For the foregoing reasons, Defendant Timothy R. Ashley is entitled to summary judgment as to the Plaintiff's claims.  Defendant requests the Court certify any grant of summary judgment as final under Rule 54.

*[Signature on the following page]*

Respectfully submitted this 4th day of March, 2011.

SHIVERS & ASSOCIATES

/S/    KENDRICK K. MCWILLIAMS
KENDRICK K. MCWILLIAMS
Georgia Bar No.  140983
Attorney for Defendant
Timothy R. Ashley

Caller Service No. 1808
Alpharetta, GA  30023-1808
Tel.: 678-317-7104
Fax: 678-317-8919
kmcwilli@travelers.com

## CERTIFICATION

Pursuant to N.D. Ga. LR 7.1D, I certify that this Brief has been prepared using Book Antigua, 13 point, as approved by this Court in LR 5.1.

IN THE UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DRUPATTY JAIPERSAUD,

     Plaintiff,

vs.

TIMOTHY R. ASHLEY, in his
individual capacity,

     Defendant.

CIVIL ACTION FILE NO.

NO. 1:10-CV-0455-JEC

## CERTIFICATE OF SERVICE

I hereby certify that I have served **DEFENDANT TIMOTHY R. ASHLEY'S BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** upon all parties, by electronic filing through the CM/ECF system

Albert Wan
Attorney at Law
1201 Peachtree Street NE
400 Colony Square, Suite 200
Atlanta, Georgia 30361
albert@albertwanlaw.com

This 4th day of March, 2011.

*[Signature on the following page]*

**SHIVERS & ASSOCIATES**

S/    KENDRICK K. McWILLIAMS
**KENDRICK K. MCWILLIAMS**
Georgia Bar No. 140983
Attorney for Defendant
Detective Timothy R. Ashley

Caller Service No. 1808
Alpharetta, GA 30023-1808
Tel.: 678-317-7104
Fax: 678-317-8919
kmcwilli@travelers.com