IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DRUPATTY JAIPERSAUD, | ) | |
|    Plaintiff, | ) | Civil Action No. |
| | ) | 10-CV-455-JEC |
|    vs. | ) | |
| | ) | |
| TIMOTHY R. ASHLEY, | ) | |
|    Defendant. | ) | |

**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff submits this brief in support of her response to defendant's motion for summary judgment (D.E. 55).

**I. THE UNDISPUTED FACTS ESTABLISH THAT DEFENDANT ASHLEY ARRESTED PLAINTIFF WITHOUT ARGUABLE PROBABLE CAUSE OR PROBABLE CAUSE IN VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS**

As plaintiff stated in her motion for summary judgment and accompanying statement of undisputed facts, Ashley is liable for violating plaintiff's federal, Fourth Amendment rights. The undisputed facts establish the following: (1) plaintiff and her husband cooperated with Ashley from the outset of his investigation; (2) plaintiff did nothing to obstruct or hinder Ashley or any other officer during the investigation; (3) Ashley made excessive and unreasonable investigatory demands upon Ms. Jaipersaud thus exceeding his lawful authority as an officer; and (4) Ashley arrested Ms. Jaipersaud when she tried to but could not abide by his unreasonable demands. Under these

undisputed facts, plaintiff is entitled to summary judgment on her federal, Fourth Amendment claim against defendant Ashley. The case law of this Circuit and the State of Georgia requires no less. *See Turner v. Jones*, Case No. 10-14547 (11th Cir. Feb. 23, 2011) (unpublished decision) (reversing entry of summary judgment, finding that officer lacked arguable probable cause to arrest plaintiff for obstruction under Georgia law as plaintiff-arrestee "cannot knowingly and willfully obstruct an officer when he did not violate and order or command of the officer"), decision attached hereto as Attachment "A"; *Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008); *Skop v. City of Atlanta*, 485 F.3d 1130 (11th Cir. 2007); *Davis v. Williams*, 451 F.3d 759 (11th Cir. 2006); *Thornton v. City of Macon*, 132 F.3d 1395 (11th Cir. 1998) (per curium);[1] *Sheth v. Webster*, 145 F.3d 1231 (11th Cir. 1998), *discussed infra* at pp. 14-15; *Lackey v. State*, 286 Ga. 163, 165 (2009) (reversing conviction for misdemeanor obstruction where arrestee "stopped immediately upon seeing the officer's vehicle and that he immediately complied with the officer's order to stop"); *Williams v. State*, 305 Ga. App. 657, 658-62 (2010) (officer lacked probable cause to arrest defendant for disorderly conduct under O.C.G.A. § 16-11-39(a) where defendant "said something unintelligible in a loud voice and tried to walk around the officers and go inside [his home]"); *Meadows v. State*, 303 Ga. App. 40, 42 & n.9 (2010) (officer lacked probable to arrest defendant for disorderly conduct where arresting officer "admitted during the encounter the only person Meadows was

---

[1] *Reese, Skop, Davis,* and *Thornton* are all discussed in detail in plaintiff's brief submitted in conjunction with her affirmative motion for summary judgment. (*See generally* D.E. 49-1.)

2

cursing about was his girlfriend and that Meadows was not acting violently toward any other person or another person's property"); *Connelly v. State*, 298 Ga. App. 223, 225 (2009) (reversing conviction for misdemeanor obstruction where defendant "did not violate any order or command of the officer"); *Dudley v. State*, 264 Ga. App. 845, 846 (2003) (reversing conviction under O.C.G.A. § 16-11-39(a)(1) for insufficient evidence where officer arrested defendant "for failing to obey his instructions … not to curse"); *Woodward v. Gray*, 241 Ga. App. 847, 850 (2000) ("[A] command to clear the general area entirely beyond the zone of police operations constitutes an overly broad and unreasonable demand that exceeds reasonable law enforcement procedure and needs"), *disapproved of on other grounds by Stryker v. State*, 297 Ga. App. 493, 495 n.1 (2009)); *Coley v. State*, 178 Ga. App. 668 (1986) (reversing conviction for misdemeanor obstruction where arrestee "did nothing more than fail to respond immediately to [the officer's] orders"); *Dumas v. State*, 159 Ga. App. 517, 518 (1981) (store owner not guilty of misdemeanor obstruction where "the police officers' sole purpose in being at appellant's grocery store was to explain to appellant the situation at The Filling Station. Having heard the explanation from [the officer], appellant expressed his opinion thereof to [the officer's] supper officer … and ordered the officers off his property"; such behavior "did not amount to an obstruction of any law enforcement officers in the lawful discharge of their duties") (citations omitted).

Defendant does not address the merits of plaintiff's Fourth Amendment claim in any meaningful fashion in his motion for summary judgment either by offering a countervailing version of ***admissible*** and ***material*** facts in his Local Rule 56.1 statement or by explaining how plaintiff's version of facts should be treated under controlling law.[2] In fact, defendant's brief is completely devoid of any legal analysis as to Ashley's violation of plaintiff's Fourth Amendment rights. At most, defendant recites a host of legal principles concerning search and seizure law and qualified immunity (*see* Def.'s Summ. J. Mot. Brief 5-9), which, even if accurate, leave the plaintiff and this Court completely in the dark as to why defendant should be entitled to summary judgment.[3]

Lastly, it bears emphasizing that the record in this case consists not only of evidence developed during the course of this litigation but also of Ashley's sworn testimony at plaintiff's jury trial and a surveillance video recording, the accuracy of which cannot be reasonably disputed. When this entire record is examined by the court under the lens of *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stores, one of which is blatantly contradicted by the record, so that no

---

[2] It should be noted that plaintiff filed her affirmative motion for summary judgment on March 3, 2011, one day ***before*** defendant filed his cross-motion for summary judgment. (*See* D.E. 49, 55.)

[3] Curiously, defendant also devotes seven pages of his brief (Def.'s Summ. J. Mot. Brief 9-17) addressing an excessive force claim that has not been asserted by plaintiff in either her original or amended complaints (D.E. 1, 35) and which plaintiff does not intend to assert against defendant Ashley. Of course, any force that Ashley used in arresting Ms. Jaipersaud and his treatment of Ms. Jaipersaud generally would be relevant in a determination of damages for Ashley's violation of Ms. Jaipersaud Fourth Amendment rights. *See Slicker v. Jackson*, 215 F.3d 1225, 1231 (11th Cir. 2000) ("In addition to damages based on monetary loss or physical pain and suffering, under the law a § 1983 plaintiff also may be awarded compensatory damages based on demonstrated mental and emotional distress, impairment of reputation, and personal humiliation") (citations omitted).

reasonable jury could believe it, a court ***should not*** adopt that version of facts for purposes of ruling on a motion for summary judgment") (emphasis added), and judged against the arguments made by plaintiff herein and in her affirmative motion for summary judgment, this court should deny defendant's motion for summary judgment.

II. **PLAINTIFF'S CLAIMS GO BEYOND THE FOURTH AMENDMENT AND ENCOMPASS ALLEGATIONS OF FALSE ARREST AND FALSE IMPRISONMENT UNDER GEORGIA STATE LAW**

In a curious case of briefing the nonexistent, defendant contends that this court should deny plaintiff's substantive due process and equal protection claims and construe her "complaint"[4] as only containing "Fourth Amendment allegations." (Def. Summ. J. Mot. Brief 7.)

Defendant's ham-handed effort to limit plaintiff's claims to the realm of the Fourth Amendment simply by his say so is meritless and should not warrant any relief by this Court. Plaintiff has not asserted any such claims against the defendant. (*Cf.* Am. Compl. ¶¶27-38.). To the extent defendant argues otherwise he is misconstruing the pleadings in this case. It is clear on the face of plaintiff's amended complaint that she has pled ***both*** federal and state claims, including two separate causes of action under Georgia state law for false arrest and false imprisonment. (*See* Am. Compl. ¶¶ 32-38.) Defendant cannot make these claims go away by deliberately misconstruing the pleadings.

---

[4] Defendant, in his summary judgment papers, refers to "the complaint" which we take to mean plaintiff's amended complaint at D.E. 35.

## III. EVIDENCE CONCERNING PRIOR INCIDENTS AT PLAINTIFF'S GAS STATION IS INADMISSIBLE

Rather than address plaintiff's factual and legal contentions head on, defendant dredges up wholly irrelevant, inadmissible and prejudicial evidence concerning past incidents at plaintiff's gas station. In a nutshell, this evidence consists of prior occasions in which defendant claims customers had complained that plaintiff made racist remarks against them. From what plaintiff can gather, this evidence is based on the following sources: (1) Ashley's September 24th narrative report; (2) Cone's September 24th narrative report; (3) a police report by Officer Brian Welch from August 22, 2008; and (4) a police report by Officer Davis from July 22, 2008. (*See* Def.'s Summ. J. Mot. Statement of Undisputed Facts ¶¶ 16-20.)

### A. Immaterial and Irrelevant

It is important to note at the outset that Ashely had ***no knowledge*** of any prior incidents at plaintiff's gas station – aside from what he had been told by Cone – ***before*** he arrested Ms. Jaipersaud. Moreover, Ashley never responded to any of these incidents and, in fact, did not know whether Cone himself did. As Ashley testified at this deposition:

> Q. Would you agree that at the time you arrested Ann you had no knowledge of any of the prior calls that took place at that gas station?
> A. That would be correct. Other than what Officer Cone had mentioned to me, I wasn't aware of any of those.
> Q. And you don't know where he got that information from?
> A. Well, he is a beat officer. So he's responded to those places before.
> Q. He didn't tell you that he responded personally?

A. No, he did not

(Ashley Dep. 99:21-100:8.)

More fundamentally, any evidence of prior incidents at plaintiff's store concerning other customers are irrelevant and immaterial to the issue of whether Ashley had arguable probable cause or probable cause to arrest Ms. Jaipersaud for disorderly conduct or obstruction or whether he acted with malice in doing so. By his own sworn testimony, Ashley explained that he arrested Ms. Jaipersaud based on "what [he] experienced with her, not what she experienced with somebody else," i.e., a customer. (*Id.* at 140:15-16.) As he further explained:

> Q. You didn't arrest Ms. Jaipersaud for assault, did you?
> A. No.
> Q. You didn't arrest her for battery?
> A. No
> Q. The initial call was a dispute and the it was changed to a fight call, correct?
> A. Yes.
> Q. But you never arrested her for a fight?
> A. No.

(*Id.* at 139:5-14.)

For this very reason alone – irrelevance – defendant should not be allowed to use any evidence of past incidents to support his motion for summary judgment. *See* Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible"); *Denney v. City of Albany*, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001) ("In considering a summary judgment motion, a court may only consider evidence that is admissible or that could be presented in an admissible form") (citation omitted).

## B. <u>Inadmissible Hearsay</u>

To the extent defendant is relying on out-of-court statements to establish that plaintiff had previously made racist remark to customers, such evidence is hearsay and cannot be used to support a motion for summary judgment. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) ("The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment") (footnote, internal quotation marks, and citation omitted). This rule applies not only to the four independent police reports indentified above but to any statements from third parties that might be contained in these reports. *United States v. Taylor*, 462 F.3d 1023, 1026 (8th Cir. 2006) ("The police report contained double hearsay, the report itself, and what the citizen told police. Therefore, 'the report is inadmissible unless each level of hearsay falls within an exception to the hearsay rule' ") (citations omitted); *see also* Fed. R. Evid. 805.

Thus, even if the reports themselves were somehow admissible under a hearsay exception – defendant has so far identified none – any statements made by or attributed to civilians contained in those reports would not be in the absence of an independently applicable hearsay exception. As the Second Circuit Court of Appeals has stated:

> [A statement by a third party] is plainly not admissible merely because contained in a police report. "It is well established that entries in a police report which results from the officer's own observations and knowledge may be admitted ***but that statements made by third persons under no business duty to report may not***."

*Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) (quoting *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983) (emphasis in original).

This principle applies with equal force to and requires the exclusion of any statements contained in Ashley's September 24th report that were made to him by Officer Cone concerning prior incidents at plaintiff's store. The fact remains that Cone's statements to Ashley were themselves based upon what Cone had been told by third parties, not on what Cone might have observed during prior investigations at plaintiff's store. (*See* Incident Report Narrative by Ofc. R. Cone at p. 4 of Ex. "A" attached to Def.'s Summ. J. Mot. Statement of Undisputed Facts (reporting that during "all three times" he responded to plaintiff's store, the customers "stayed outside and waited for the police arrive" and "*advised* that the clerk … used racially derogative terms towards them") (emphasis added). For this reason, any statements by Cone to Ashley as to prior incidents at plaintiff's store constitute inadmissible hearsay and should not be considered by this court in conjunction with defendant's summary judgment motion.

    **C.**    **The July 20, 2008 and August 22, 2008 Incident Reports Are Irrelevant, Prejudicial and Therefore Inadmissible; The July 20th Report Should Be Stricken Under Fed. R. Civ. P. 12(f) and Fed. R. Evid. 403**

Nor should the court consider the July 20, 2008 and August 22, 2008 incident reports submitted and cited to by defendant in paragraph 17 of his statement of undisputed facts. (*See* Def. Summ. J. Mot. Statement of Undisputed Facts ¶ 17.) Aside

from their irrelevance to plaintiff's claims and their nature as inadmissible hearsay, these reports are inadmissible for a far more basic reason: they do not support the fact – Cone's prior responses to plaintiff's store concerning customer disputes – that defendant claims they do. First, Cone was not the author of either report, nor do they indicate that he had, at any time, personally responded to the incidents that were the subjects of said reports. Second, the July 20th report has nothing whatsoever to do with a prior customer dispute but instead concerns an argument that plaintiff had with her husband. In addition, the potential admission of the July 20th report would be highly prejudicial to plaintiff as it concerns a subject of highly personal nature with no conceivable relevance to the claims in this case. Thus, aside from being inadmissible in this case for sheer irrelevance, plaintiff requests that this court strike the July 20th report from the record under Federal Rule of Civil Procedure 12(f) and Federal Rule of Evidence 403 as unduly prejudicial to plaintiff.

IV. **DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIM OF FALSE IMPRISONMENT[5]**

Defendant argues that he is entitled to summary judgment on plaintiff's state law claim of false imprisonment because this claim is barred by the doctrine of official immunity.[6] For the reasons stated below, this argument must fail.

---

[5] Defendant argues, and plaintiff concedes, that plaintiff cannot state a cause of action for false arrest under O.C.G.A. § 51-7-1. (*See* Am. Compl. ¶¶ 32-34; Def.'s Summ. J. Mot. Brief 18.) As the Court of Appeals recently clarified in *Ferrel v. Mikula*, 295 Ga. App. 326, 333 (2008), a claim for false arrest under O.C.G.A. § 51-7-1 is ***not*** available in cases of an arrest "without a warrant" which is the situation here.

### A. Legal Standard

"The doctrine of official immunity … offers pubic officers and employees limited protection from suit in their personal capacity." *Cameron v. Lang*, 274 Ga. 122, 123 (2001) (citing *Gilbert v. Richardson*, 264 Ga. 744, 750 (1994)). Thus, to impose liability where a public employee is performing a discretionary duty – as Ashley was doing here in his arrest of Ms. Jaipersaud – a plaintiff must show that the individual acted "with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. art. I, § 2, ¶ IX(d); *accord Jordan v. Mosley*, 487 F.3d 1350, 1357 (11th Cir. 2007) (citations omitted). According to Georgia state law, "actual malice means a deliberate intention to do a wrongful act." *Adams v. Hazelwood*, 271 Ga. 414, 415 (1999) (citing *Merrow v. Hawkins*, 266 Ga. 390, 391

---

[6] Defendant does not argue with any specificity that he is entitled to summary judgment on the merits of plaintiff's state law-based false imprisonment claim. (*Cf.* Def.'s Summ. J. Mot. Brief 18-19.) There is little question, however, that defendant would be liable for false imprisonment should this Court grant plaintiff's partial motion for summary judgment as to her federal, Fourth Amendment claim. Under Georgia law, "false imprisonment is 'the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty.' " *Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322, 1357 (N.D. Ga. 2002) (quoting O.C.G.A. § 51-7-20). While a plaintiff "***need not show*** malice or lack of probable cause to state a claim for false imprisonment," *id.* (citing *Lowe v. Turner*, 115 Ga. App. 503 (1967)) (emphasis added), a "defense of a warrantless arrest in a false imprisonment case ***must show*** that the arrest was made on probable cause and pursuant to the appropriate exigent circumstances," *Arbee v. Collins*, 216 Ga. App. 63, 66 (1995) (citation omitted) (emphasis added). *See also Scott Housing Sys. v. Hickox*, 174 Ga. App. 23, 26 (1985) ("[A] defendant in a false arrest case premised upon a warrantless arrest does not carry his defensive burden by merely demonstrating the existence of probable cause but must go further and establish the arrest was made because of 'exigent circumstances' ") (citation omitted). Based on these principles, if plaintiff were to successfully establish that Ashley arrested her without probable cause pursuant, defendant would, *a fortiori*, fail in any effort to defend against plaintiff's false imprisonment claim since he would not be able argue that he had probable cause to arrest plaintff.

(1996)). It is important to note that "[s]uch an act may be accomplished with or without ill will and whether or not injury was intended." *Id*.

Here, construing the facts in the light most favorable to plaintiff, as this court must do on a defensive motion for summary judgment, a reasonable juror could conclude defendant acted with "actual malice" in arresting plaintiff. The record clearly reflects that Ashley became angry after he could not figure out how to operate the video surveillance system. This frustration resulted in Ashley's belligerent demand that Ms. Jaipersaud furnish the "immediate" presence of her son so he could assist in operating the video surveillance system despite plaintiff having told Ashley that her son was then attending class at Clayton State University. (*See* State v. Jaipersaud, Trial Tr. 62:18-63:13.)[7] When plaintiff tried to but could not abide by Ashley's unreasonably broad command, he threatened her with arrest. At this point, plaintiff was well within her First Amendment right to question Ashley about the bases for his threat and for his unreasonable investigatory demands. *See City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987) ("The freedom of individuals to verbally oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state"); *Johnson v. Campbell*, 332 F.3d 199, 212 (3d Cir. 2003) ("To be punishable [under the First Amendment], words must do more

---

[7] References to "State v. Jaipersaud, Trial Tr." are to the transcript compiled during plaintiff's two-day Gwinnett County jury trial on the charges stemming from the September 24th incident, a certified copy of which plaintiff manually filed as SMF Attachment "F" in conjunction with her motion for summary judgment. (*See* D.E. 54.)

12

than bother the listener; they must be nothing less than 'an invitation to exchange fisticuffs.' ***This is equally true when the words are spoken in the presence of police officers***") (citation omitted, emphasis added).[8]  Yet when plaintiff chose to exercise her constitutional right, Ashley found it "offensive" and "disrespectful," and ultimately arrested her.  (Ashley Dep. 95.)  This constituted a deliberate act of wrongdoing on Ashley's part.  *See Skop*, 485 F.3d at 1139 ("[T]he idea that Skop's brief inquiry to the officer somehow provided a basis for arrest collides head-on with the First Amendment").

Ashley's post-arrest conduct is particularly probative of his "actual malice" in the official immunity context.  Ms. Jaipersaud testified that at the time Ashley grabbed her arm and pulled her out of the store, she asked him what he was arresting her for, to which he responded "you will know."  (Jaipersaud Dep. 41:1.)  This indicates that Ashley, ***in his own mind,*** had no justification, lawful or otherwise, for arresting Ms. Jaipersaud but ***deliberately did it anyway to stop Ms. Jaipersaud from questioning his authority and thus exercising her First Amendment right***.  Moreover, Ashley's

---

[8] Indeed, as the *Johnson* court pointed out, this "'fighting words' exception 'might require a ***narrower*** application in cases involving words addressed to a police officer, because 'a properly trained officer may reasonably by expected to exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.' " *Id.* (quoting *Hill*, 482 U.S. at 462 (Powell, J., concurring).

Ironically, Ashley himself recognized the import of this principle during his deposition; thus, when asked by plaintiff's counsel whether he agreed with the following proposition: "A police officer should exercise a higher degree of retrain than an average citizen and thus be less likely to respond belligerently to fight words," Ashley answered, "I *strongly* agree."  (Ashley Dep. 48:7-11) (emphasis added).

aggressive conduct, as documented by his prior testimony and by the surveillance video, (*see* State v. Jaipersaud, Trial Tr. 63:18-64:16; SMF Attachment "B" at 13:50 to 13:52, 34:40 to 34:48),[9] demonstrates that Ashley intended to arrest Ms. Jaipersaud not only to prevent her from speaking back to him but also in retaliation of her decision to do so, rather than for any crime that Ms. Jaipersaud might have committed. *See Hill v. Mull*, Case. No. 5:04-CV-329 (DF) (M.D. Ga. Oct. 23, 2006) (denying official immunity for false arrest claim), attached hereto as Attachment "B".

The case of *Sheth v. Webster*, 145 F.3d 1231 (11th Cir. 1998) is particularly instructive. In *Sheth*, a resident of a motel started a dispute with the owner of the motel over the owner's refusal to issue a refund of rent. During the argument, the resident acted in a "loud[] and combative[]" manner. Officer Webster responded to the motel and "advised the plaintiff to refund the money." The plaintiff, however, rejected the officer's suggestion, and explained to the officer the reasons for her refusal. In response, the officer "chided [the plaintiff] that, being of Indian ethnicity, '[y]ou don't know our law.'" "The plaintiff verbally stood her ground, responding, 'Police officers don't know all the law, either, but I know some laws and my rights.'" At this point, the officer "became enraged and violent," physically restraining the plaintiff and then placing her under arrest. *Id.* at 1234. In ruling on plaintiff's claims of false arrest,

---

[9] The court is respectfully referred to the DVD, labeled SMF Attachment "B", that plaintiff had filed manually with the court as part of her statement of undisputed material facts in support of her motion for summary judgment. (*See* D.E. 54.) All pinpoint time citations contained in this response are to the actual playing time of the above-referenced DVD, not the time stamps created by the surveillance video system.

excessive force, among others, the *Sheth* court first denied the arresting officer qualified immunity on the false arrest claim, stating the following:

> We cannot conclude that a reasonable police officer could have believed that probable cause existed to arrest plaintiff. When plaintiff objected to Webster's attempt to dictate the motel's refund policy and challenged his knowledge of the law, Webster became incensed and placed her under arrest. We reject Webster's claim that plaintiff unlawfully interfered with his duties and committed a crime by demanding that Williams vacate the premises if he wanted a refund.

*Id.* at 1238.

Notably and especially pertinent to the present discussion, the *Sheth* court went on to affirm the trial court's denial of "discretionary function immunity" to officer under Alabama state law, concluding, based on the arresting officer's conduct, that there existed "an issue of fact as to whether [the officer] acted ***maliciously, willfully or in bad faith*** with regard to the very acts leading to … false arrest …." *Id.* at 1239-40. Plaintiff submits that the facts of this case are indistinguishable from those in *Sheth*. Accordingly, defendant is not entitled to summary judgment on plaintiff's state law, false imprisonment claim.

## **CONCLUSION**

For the reasons stated in this brief and in plaintiff's response to defendant's statement of undisputed facts, plaintiff respectfully requests that this Court deny defendant's motion for summary judgment in its entirety and enter judgment in her

15

favor on her partial motion for summary judgment, finding Ashley liable for violating her federal, Fourth Amendment rights.[10]

Respectfully submitted this 22nd day of March 2011.

/s/ Albert Wan
Georgia Bar No. 334224
albert@albertwanlaw.com
Attorney for Plaintiff

1201 Peachtree Street
400 Colony Square, Suite 200
Atlanta, GA 30361
404-872-7760 – Tel.
404-872-7764 – Fax

---

[10] Plaintiff's counsel certifies that this brief is in Times New Roman, 14 point.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2011, I electronically filed the attached with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Kendrick K. McWilliams, Esq.
Attorney for Defendants
Shivers & Associates
Caller Service No. 1808
Alpharetta, GA 30023-1808
678-317-7104 – Tel.
678-317-8917 – Fax
kmcwilli@travelers.com – Email

/s/ Albert Wan
Georgia Bar No. 334224
Attorney for Plaintiff

1201 Peachtree Street
400 Colony Square, Suite 200
Atlanta, GA 30361
404-872-7760 – Tel.
404-872-7764 – Fax
albert@albertwanlaw.com – Email