# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

DRUPATTY JAIPERSAUD,

    Plaintiff,

    v.

TIMOTHY R. ASHLEY,

    Defendant.

CIVIL ACTION
No. 1:10-cv-0455-SCJ

## O R D E R

This matter is before the Court on Plaintiff's motions for partial summary judgment [Doc. Nos. 49 and 50] and Defendant's motion for summary judgment [Doc. No. 55].

## I.    BACKGROUND

This action under 42 U.S.C. § 1983 arose out of events that took place on September 24, 2008, at a Chevron gasoline station and convenience store in Lawrenceville, Georgia.  Detective Timothy Ashley was one of a handful of law enforcement officers who responded to a dispatch call of a dispute between a convenience store customer and the owner of the store.  Detective Ashley was met by Mr. Leon Noble and his wife, both African American, outside the convenience store.  He was told by the couple that an argument had ensued with the store owner, Mrs. Jaipersaud, after Mr. Noble was unable to get gasoline at the pump and went

inside the store to inquire.[1]  Mr. Noble claimed Mrs. Jaipersaud used a racial epithet and slapped him on the hand.  Detective Ashley then went into the store to talk to Mr. and Mrs. Jaipersaud.  Mrs. Jaipersaud denied slapping Mr. Noble or using a racial epithet.  Rather, Mrs. Jaipersaud, who is of Indian descent and a former native of Guyana, South America, told Detective Ashley that Mr. Noble had been offensive and had directed a racially derogatory word at her.

The convenience store had a video surveillance system monitoring areas inside and outside the store.[2]  Detective Ashley was interested in looking at the recorded footage to see what had transpired after Mr. Noble entered the store and to determine whether there was evidence of physical contact between Mrs. Jaipersaud and Mr. Noble.  Mrs. Jaipersaud provided the police officers with access to the store's video surveillance system.  However, Detective Ashley and a fellow police officer were unable to play back the recording and the Jaipersauds indicated that they did not know how to operate the system.  When asked if she would contact her son, who knew how to operate the system, and have him come to the store immediately, Mrs. Jaipersaud expressed her reservation in contacting her son while he was at school and more than an hour away.  Nonetheless, Detective Ashley asked

---

[1]  The video surveillance footage shows a heated verbal exchange between the Nobles and Mr. and Mrs. Jaipersaud [Doc. No. 50-2, Video Exhibit B 3:50–4:43].

[2]  There is no audio component to the recording.

her to contact her son. He noted that Mrs. Jaipersaud had become more agitated and more loud as he continued to ask that she contact her son [Doc. No. 48, 70:1–16]. Upon Detective Ashley's insistence, Mrs. Jaipersaud attempted to call her son but was unable to reach him on the phone. She then told Detective Ashley that she had tried to call her son [Doc. No. 48, 119:23–120:2].[3] Detective Ashley did not hear her speak during the phone call [Doc. No. 48, 168:3–11, 169:19–170:7]. Thereafter, Mrs. Jaipersaud began to question Detective Ashley's treatment of her [Doc. No. 48, 95:1–4; Doc. No. 50-4, ¶65] in a manner Detective Ashley describes as "disrespectful," [Doc. No. 48, 95:1–2] and Detective Ashley arrested her for violation of § 31-101 paragraph 1 (c) and (k) of Lawrenceville's disorderly conduct ordinance [Doc. No. 50-3, Exhibit H].[4] She was later charged with disorderly conduct in

---

[3] It is disputed whether Mrs. Jaipersaud told Detective Ashley that she was unable to get through to her son [Doc. No. 56, ¶47].

[4] The ordinance provides:

> It shall be unlawful for any person or persons to create any disturbance that is contrary to the peace and tranquility enjoyed by the people . . . ; or ignore, interfere or disobey a lawful command from a law enforcement officer in the lawful performance of his duties; or engage in any of the following acts: . . . (c) Any person who shall endanger the lawful pursuits of another by acts of violence, threats of violence or abusive conduct; or . . . (k) Any person who shall without provocation, use to or of another, in his or her presence "fighting words" that are opprobrious or abusive words which by their very utterance tend to incite an immediate breach of the peace or such words, which, as a matter of common knowledge under ordinary circumstances will, when used to or of another person in his or her presence, naturally tend to provoke violent resentment.

violation of O.C.G.A. § 16-11-39(a)(1) and for simple battery in violation of O.C.G.A. § 16-5-23(a)(1) [Doc. No. 50-3, Exhibit I]. Following a jury trial, Mrs. Jaipersaud was acquitted on both those charges.

Mrs. Jaipersaud brought the instant action for damages against Detective Ashley under 42 U.S.C. § 1983 for his alleged violation of the Fourth and Fourteenth Amendments of the Constitution. Her complaint also asserts a claim of false arrest under O.C.G.A. § 51-7-1[5] and a claim for false imprisonment under O.C.G.A. § 17-4-20(a). She now moves for partial summary judgment as to Defendant Ashley's liability on her federal, Fourth Amendment, claim [Doc. No. 49]. Detective Ashley also moves for summary judgment on the federal and state law claims against him asserting qualified and official immunity, respectively [Doc. No. 55].

---

Lawrenceville, Ga., Code § 31-101, ¶1 (2005).

[5] Mrs. Jaipersaud concedes that she "cannot state a cause of action for false arrest under O.C.G.A. § 51-7-1" [Doc. No. 58-1, 10 n.5]. Therefore, the Court does not address the merits of this claim in its analysis.

## II. __LEGAL STANDARD__

Federal Rules of Civil Procedure 56(a) provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law."[6]

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260

---

[6] On December 1, 2010, an amended version of Rule 56 of the Federal Rules of Civil Procedure became effective. The amendments to Rule 56 "are intended to improve the procedures for presenting and deciding summary-judgment motions" and "are not intended to change the summary-judgment standard or burdens." Committee on Rules of Practice and Procedure, Report of the Judicial Conference, page 14 (Sept. 2009). Farmers Ins. Exchange v. RNK, Inc., 632 F.3d 777, 782 n.4 (1st Cir. 2011). "[B]ecause the summary judgment standard remains the same, the amendments 'will not affect continuing development of the decisional law construing and applying' the standard now articulated in Rule 56(a). Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.). Accordingly, while the Court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule." Murray v. Ingram, No. 3:10-CV-348-MEF, 2011 WL 671604, *2 (M.D. Ala. Feb. 3, 2011).

(11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  The

moving party's burden is discharged merely by "'showing'—that is, pointing out to

the district court—that there is an absence of evidence to support [an essential

element of] the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325

(1986).  In determining whether the moving party has met this burden, the district

court must view the evidence and all factual inferences in the light most favorable

to the party opposing the motion.  <u>Johnson v. Clifton</u>, 74 F.3d 1087, 1090

(11th Cir. 1996).  Once the moving party has adequately supported its motion, the

non-movant then has the burden of showing that summary judgment is improper

by coming forward with specific facts showing a genuine dispute.  <u>Matsushita Elec.

Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  There is no "genuine

[dispute] for trial" when the record as a whole could not lead a rational trier of fact

to find for the nonmoving party.  <u>Id.</u> (citations omitted).  All reasonable doubts,

however, are resolved in the favor of the non-movant. <u>Fitzpatrick v. City of Atlanta</u>,

2 F.3d 1112, 1115 (11th Cir. 1993).

III.  <u>**ANALYSIS**</u>

A.  <u>**Section 1983 Action**</u>

Mrs. Jaipersaud asserts that Detective Ashley arrested her without probable

cause in violation of the Fourth Amendment and, thus, is liable pursuant to

42 U.S.C. § 1983 in his individual capacity. Detective Ashley argues that he is shielded from liability based on qualified immunity [Doc. No. 55-1].[7]

Qualified immunity provides government officers with "immunity from suit," Saucier v. Katz, 533 U.S. 194, 200 (2001), "for torts committed while performing discretionary duties unless [the officers'] conduct violates a clearly established statutory or constitutional right." Edwards v. Shanley, --- F.3d ----, 2012 WL 89193, at *3 (11th Cir. 2012) (quoting Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008)). It is undisputed that Detective Ashley was performing a discretionary function when he arrested Mrs. Jaipersaud [Doc. No. 49-1, 18 n.12]. Thus, the burden shifts to Mrs. Jaipersaud to show that Detective Ashley is not entitled to qualified immunity. See Lewis v. City of West Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009).

Once the question of discretionary authority is resolved, the court next considers whether the conduct complained of violated a constitutional right. Lewis, 561 F.3d at 1291. If the facts, viewed "in the light most favorable to the party asserting the injury," establish that the officer's conduct violated a constitutional right, then the court must proceed to determine "whether the right was clearly

---

[7] Detective Ashley's response to Mrs. Jaipersaud's motion for partial summary judgment simply incorporates by reference his motion for summary judgment based, in part, on qualified immunity [see Doc. No. 57].

established."  Saucier, 533 U.S. at 201.  On the other hand, "[i]f no constitutional rights would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  Id.

"An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest."  Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003). The probable cause requirement is met where the arrest is "objectively reasonable based on the totality of the circumstances."  Id.  An arrest is objectively reasonable if "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Id.  (quoting Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 2003)).  In an instance where actual probable cause may have be absent, an officer is, nonetheless, entitled to qualified immunity if there existed arguable probable cause for the arrest.  Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004).  Thus, qualified immunity will apply where "the facts and circumstances [were] . . . such that the officer reasonably could have believed that probable cause existed."  Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997).

Detective Ashley arrested Mrs. Jaipersaud for "obstruction" and charged her with disorderly conduct, an offense which he understood to include obstruction

[Doc. No. 48, 54:15–24], under the local ordinance. In the citation given to Mrs. Jaipersaud, Detective Ashley noted that she "struck patron while conducting business[,] then refused to cooperate with police" [Doc. No. 50-3, Exhibit H]. Although Detective Ashley specifically cited subparagraphs (c) and (k) of the local disorderly conduct ordinance, which deal with abusive conduct and the use of "fighting words," subparagraph (p) of the section cited further prohibits an individual from "knowingly or willfully, ignoring, interfering with or disobeying a lawful command from or obstructing a law enforcement offer in the lawful performance of his duties." Lawrenceville, Ga., Code § 31-101, ¶1 (2005).

Mrs. Jaipersaud argues that nothing in her behavior during the course of Detective Ashley's investigation could reasonably be construed as obstructive, that she fully cooperated with the police, and that she was arrested for her "inability to abide by [Detective Ashley's] overly broad and unreasonable demand" [Doc. No. 49-1, 14].[8] Without providing any specific details, Detective Ashley maintains that "he reasonably concluded that probable cause existed for the Plaintiff's arrest as a

---

[8] For the same reasons, Mrs. Jaipersaud also argues that Detective Ashley lacked probable cause to arrest her under O.C.G.A. 16-10-24(a), which provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor."

result of her refusal to cooperate during a police investigation" [Doc. No. 55-1, 6].[9]

The record indicates that soon after his arrival at the convenience store, Detective Ashley began investigating the cross-allegations made by Mr. Noble and Mrs. Jaipersaud. Mr. Noble and Mrs. Jaipersaud, each accused the other of using racial epithets, and Mr. Noble additionally accused Mrs. Jaipersaud of hitting him. Detective Ashley considered it necessary to view the surveillance video, particularly to determine whether Mr. Noble had been hit. The Jaipersauds offered access to the video equipment and even provided the system manual. However, the physical access provided Detective Ashley no meaningful help in achieving his objective to view the surveillance video. The Jaipersauds did not know how to play back the surveillance footage, and Detective Ashley and a fellow officer tried and failed to play back the recording. Detective Ashley then insisted that Mrs. Jaipersaud contact her son and ask him to come to the store to play back the recording. Mrs. Jaipersaud made a phone call and told Detective Ashley that she had tried to call her son. However, Detective Ashley did not see her talk on the phone. Additionally, Mrs. Jaipersaud began questioning Detective Ashley's conduct. Based on her actions,

_____

[9] While Detective Ashley's counsel has moved for summary judgment based on qualified immunity and has incorporated that motion, and the accompanying memorandum of law, as the entirety of his response to Mrs. Jaipersaud's motion for partial summary judgment as to liability. However, counsel's memorandum focuses upon the issue of excessive force—a claim not raised by Mrs. Jaipersaud—to the near exclusion of the federal false/unlawful arrest claim Mrs. Jaipersaud has raised [see Doc. No. 55-1, 6–17].

Detective Ashley concluded that Mrs. Jaipersaud had not called her son, although she had told him that she had, [Doc. No. 48, 119:23–120:2] and was unwilling to have the surveillance video accessed [Id. 88:4–89:6].

It is undisputed that Detective Ashley did not observe the altercation between Mr. Nobel and Mrs. Jaipersaud [see Doc. No. 56, Defendant's Response to Plaintiff's Statement of Undisputed Material Facts ¶ 22; Doc. No. 48, 112:6–7, 114:25–114:4]. While Mr. Nobel alleged that Mrs. Jaipersaud slapped him and called him an offensive name, that allegation was rebutted by Mrs. Jaipersaud who denied doing so and pointed to Mr. Nobel as the aggressor. Detective Ashley acknowledges that he had no reason to believe Mrs. Jaipersaud was being untruthful with him initially [Doc. No. 48, 137:7–13]. In view of the two equally plausible, conflicting accounts of the altercation, an officer could not have reasonably believed that probable cause existed to arrest one individual over the other for disorderly conduct. Thus, at the outset of the investigation, there existed no arguable probable cause to arrest Mrs. Jaipersaud for violations of subparagraphs (c) and (k) of the disorderly conduct ordinance. Additionally, it is not contended that Mrs. Jaipersaud used either "fighting words" in violation of subparagraph (k) or exhibited violent abusive conduct in violation of subparagraph (c) in Detective Ashley's presence.

To the extent that arguable probable cause existed to arrest Mrs. Jaipersaud, it arose, if at all, during Mrs. Jaipersaud's later interaction with Detective Ashley. If that interaction gave rise to arguable probable cause for arrest on any violation, then it is of no consequence to the qualified immunity analysis if Mrs. Jaipersaud was not cited for the actual offense committed. The Eleventh Circuit has held that "[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." Durruthy v. Pastor, 351 F.3d 1080, 1090 n.6 (11th Cir. 2003) (quoting Bailey v. Bd. of County Comm'rs of Alachua County, 956 F.2d 1112, 119 n.4). Thus, an officer "is shielded by qualified immunity so long as [the officer] had probable cause to arrest . . . for any offense." Id. See also, Woodruff v. City of Trussville, 434 Fed. App'x 852, 855 (11th Cir. 2011). Here, the Court has noted, that the disorderly conduct ordinance prohibits an individual from obstructing a law enforcement officer's lawful performance of his duties. Thus, even if Detective Ashley did not have probable cause to arrest Mrs. Jaipersaud for a violation of subparagraphs (c) and (k) of the disorderly conduct ordinance, he would be entitled to qualified immunity if there existed arguable probable cause for obstruction either under the disorderly conduct ordinance or under Georgia's misdemeanor obstruction statute, O.C.G.A. § 16-10-24(a).[10]

---

[10] Section 16-10-24(a) provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty

There was no arguable probable cause for Mrs. Jaipersaud's arrest for obstruction under § 16-10-24(a). "[A]n individual who obstructs an officer during the investigation of a crime may be guilty of obstruction notwithstanding the lack of probable cause to arrest the individual." West v. State, 673 S.E. 2d 558, 561 (Ga. 2009). Pursuant to O.C.G.A. § 16-10-24(a), obstruction of a police officer "includes any act that directly interferes with, impedes, interrupts, or prevents or perverts the public administration of justice." Panzer v. State, 616 S.E. 2d 201, 202 (Ga. Ct. App. 2005). An obstructive act is not limited to "forcible resistance or a threat of violence." Turner v. Jones, 415 Fed. App'x 196, 199 n.3 (11th Cir. 2011). Thus, an individual may commit a verbal act of obstruction by "[l]ying or intentionally misleading an officer in the lawful discharge of his duty." Woodward v. Gray, 241 Ga. App. 847, 849 (2000).

The undisputed facts show that a reasonable police officer could not have construed Mrs. Jaipersaud's actions as obstructive. Mrs. Jaipersaud cooperated with Detective Ashley's investigation by providing the police officers access to the store's

---

of a misdemeanor." This statutory language is mirrored in subparagraph (p) of Lawrenceville's disorderly conduct ordinance, which prohibits an individual from "knowingly or willfully, ignoring, interfering with or disobeying a lawful command from or obstructing a law enforcement offer in the lawful performance of his duties." Lawrenceville, Ga., Code § 31-101, ¶1 (2005). The Court, therefore, only addresses whether there existed arguable probable cause to arrest Mrs. Jaipersaud for obstruction under § 16-10-24(a).

surveillance system.  There was no indication that she was lying when she indicated that she did not know how to play back the video recording.  When asked to contact her son, she attempted to do so in Detective Ashley's presence.  Even if, as Detective Ashley alleges, she did not talk on the phone, that did not provide cause to conclude that she had lied or was somehow attempting to hinder the investigation.  Her actions were consistent with her representation that she had tried to call her son—she called her son, determined that his phone was turned off, and terminated the call.  Even if, as Detective Ashley alleges, Mrs. Jaipersaud became more agitated upon his insistence that she contact her son, that agitation was in line with her reluctance to contact her son in school.  At no point did Mrs. Jaipersaud act in a manner contrary to Detective Ashley's directives.  Thus, her agitation coupled with the fact that Detective Ashley did not see her talk on the phone was not sufficient for a reasonable police officer to conclude that she was lying or intending to hinder the investigation.  Similarly, her comments to Detective Ashley, even if considered "disrespectful," did not supply arguable probable cause for arrest for obstruction. As the Eleventh Circuit  noted in Skop v. City of Atlanta, "the First Amendment . . . 'protects a significant amount of verbal criticism and challenge.'" 485 F.3d 1130, 1139 (11th Cir. 2007) (quoting City of Houston v. Hill, 482 U.S. 451, 461 (1987)). Lastly, nothing in Mrs. Jaipersaud's conduct, especially considering that

she had already allowed the police officers unquestioned access to the store's surveillance system, supplied arguable probable cause for Detective Ashley to arrest her for allegedly slapping Mr. Nobel and calling him an offensive name. Considered in their totality, Mrs. Jaipersaud's actions would not have led a police officer to reasonably conclude that she violated Lawrenceville's disorderly conduct ordinance or committed misdemeanor obstruction.

As such, the Court concludes that Detective Ashley is not entitled to qualified immunity. Mrs. Jaipersaud arrest in the absence of probable cause "[plainly] violates the right to be free from an unreasonable search under the Fourth Amendment." Durruthy, 351 F.3d at 1088. Furthermore, the principle "that an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures" has been clearly established since before the time of Mrs. Jaipersaud's arrest in 2008. Skop, 485 F.3d at 1143. Because, the undisputed facts are sufficient to support the Court's conclusion that Detective Ashley is not entitled to qualified immunity, Mrs. Jaipersaud's motion for partial summary judgment as to Detective Ashley's liability on her federal law claim [Doc. No. 49] is GRANTED.

**B.  State Law Claim**

Official immunity bars Mrs. Jaipersaud's claim for false imprisonment in violation of O.C.G.A. § 17-4-20(a). Official immunity, under Georgia law, "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without willfulness, malice, or corruption." Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001). Thus, a public officer . . . may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure." Id. Mrs. Jaipersaud concedes that Detective Ashley was performing a discretionary act when he arrested her [Doc. No. 49-1, 18 n.12]. Thus, it must be shown that Detective Ashley acted with malice or intent to injure Mrs. Jaipersaud. "[I]n the context of official immunity, actual malice requires a deliberate intention to do wrong, and denotes express malice or malice in fact." Adams v. Hazelwood, 520 S.E.2d 896, 898 (Ga. 1999). The record does not indicate that Detective Ashley deliberately intended to wrongfully arrest or imprison Mrs. Jaipersaud.

Mrs. Jaipersaud argues that she was arrested because she failed to follow Detective Ashley's "unreasonable investigatory demands," [Doc. No. 58-1, 12], and then questioned his actions. However, the record shows that Mrs. Jaipersaud's arrest was motivated by Detective Ashley's belief that she was obstructing his investigation. See Taylor v. Waldo, 709 S.E.2d 278, 281–82 (Ga. Ct. App. 2011)

(concluding that official immunity applied to shield an arresting officer against a claim of false imprisonment where the evidence showed that the arrest was motivated by plaintiff's failure to follow the officer's precise instruction to remove his license from his wallet and the officer's belief that the failure "automatically amounted to obstruction").  Even if, as Mrs. Jaipersaud alleges, Detective Ashley became angry when unable to access the video recording, there is no indication that he arrested Mrs. Jaipersaud for anything other than his belief that, contrary to her statement to him, she had not attempted to contact her son and his belief that she was attempting to hide something in relation to the altercation with Mr. Nobel [Doc. No. 48, 79:13–15; 88:15–89:6, 138:7–139:4].   As such, the Court concludes Mrs. Jaipersaud's claim for false imprisonment under O.C.G.A. § 17-4-20(a) is barred by official immunity.

IV.    **CONCLUSION**

For the above stated reasons, Plaintiff's motion for partial summary judgment [Doc. No. 49 and 50] is **GRANTED**.  Defendant's motion for summary judgment [Doc. No. 55] is **DENIED** in part and **GRANTED** in part.  Specifically, Defendant's motion is denied as to the federal claim and is granted as to the state law claims.  As the issue of a damages award remains outstanding, the parties are **DIRECTED** to

file a consolidated pretrial order in accordance with Rule 16.4 of the Court's Local

Rules.

**SO ORDERED**, this 9<u>th</u> day of February, 2012.

s/Steve C. Jones_____
STEVE C. JONES
United States District Judge
