## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DRUPATTY JAIPERSAUD,      )
                            )
      Plaintiff,          )
                            )
v.                       )   CIVIL ACTION FILE
                            )   NO.:  10-CV-455-SCJ
TIMOTHY ASHLEY, in his    )
individual capacity,       )
                            )
      Defendant.      )

---

## CONSOLIDATED  PRETRIAL ORDER

1.

**There are no motions or other matters pending for consideration by the court expect as noted:**

**Plaintiff's Response:**

There are presently no motions pending before the Court.  Plaintiff request permission to file any motions *in limine* no later than fourteen (14) days before the date on which trial is set to commence.  Responses thereto shall be due no later than seven (7) days before the date on which trial is set to commence.

**Defendant's Response**:

Defendant reserves the right to file Motions in Limine prior to trial.

2.

**All discovery has been completed, unless otherwise noted. The Court will not consider any further motions to compel discovery. (Refer to LR 37.1.B, NDGa). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.**

For the Plaintiff:

Plaintiff has asked a non-party – the City of Lawrenceville Police Department – to produce audio tapes and CAD reports of 9-1-1 calls related to the incident. Defendant's counsel replied some time ago on behalf of the City of Lawrenceville Police Department indicating that the audio tapes could only be made available, however, they have not been produced. Plaintiff will continue to work cooperatively with Lawrenceville in an effort to secure this evidence without the need for court intervention.

For the Defendant:

Discovery has been completed.

3.

**Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non—joinder of any parties.**

There is no issue as to misjoinder or non-joinder of any parties.

4.

**Unless otherwise noted, there is no question as to the jurisdiction of the Court.  Jurisdiction is based upon the following code section:**

There is no issue as to the jurisdiction of the court.  See 28 U.S.C. §§ 1331 and 1343.

5.

**The following individually-named attorneys are hereby designated as lead counsel for the parties:**

**Plaintiff**:

**Albert Wan**
Albert Wan, Attorney at Law
1201 Peachtree Street NE
400 Colony Square, Suite 200
Atlanta, Georgia 30361
albert@albertwanlaw.com

**William J. Atkins**
Atkins & Fife, LLC
6400 Powers Ferry Road, Ste 355
Atlanta, Georgia  30339
Tel. (404) 969-4130
bill@atkinsfife.com

**Defendant**: Kendrick McWilliams
SHIVERS & ASSOCIATES
Caller Service No. 1808
Alpharetta, GA 30023-1808
T: (678) 317-7104
F: (678) 317-8917
kmcwilli@travelers.com

6.

**Normally, the Plaintiff is entitled to open and close arguments to the jury. (Refer to LR 39.3B(2) (b), NDGa.) State below the reasons, if any, why the Plaintiff should not be permitted to open arguments to the jury.**

Plaintiff will open and close argument to the jury.

7.

**The captioned case shall be tried (___X___) to a jury or _____ to the Court without a jury, or ( _____ ) the right to a trial by jury is disputed.**

8.

**State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.**

The parties agree that there is no need to bifurcate the trial.

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the Court propound to the jurors concerning their legal qualifications to serve.

Attachment "A" is attached hereto.

10.

Attached hereto as Attachment "B-1" are the general questions which Plaintiffs wish to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" are the general questions which Defendant wishes to be propounded to the jurors on voir dire examination.

The Court shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the district judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each Judge.

11.

**State any objections to the parties' respective voir dire questions.**

1.    Plaintiff's Objections:

Plaintiff objects to the following voir dire questions proposed by the

Defendant:  25, 26, 28, 29, 32, 33, 34, 35, 39, 40 and 41.  In each instance, the

proposed question either fails to seek information relevant to selection of a fair and

impartial jury; and/or improperly invades upon the personal privacy of the juror.

2.    Defendant's Objections:

None.

12.

**All civil cases to be tried wholly or in part by jury shall be tried before a**

**jury consisting of not less than six (6) members, unless the parties stipulate**

**otherwise. The parties must state in the space provided below the basis for**

**any requests for additional strikes. Unless otherwise directed herein, each side**

**as a group will be allowed the number of peremptory challenges as provided**

**by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).**

The parties do not request additional strikes.

Plaintiff requests a jury of six (6) with two (2) alternates, which is consistent

with the requirements set forth in the Federal Rules of Civil Procedure.

13.

**State whether there is any pending related litigation. Described briefly, including style and civil action number:**

There are no pending related cases.

14.

**Attached hereto as Attachment "C" is Plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.**

15.

**Attached hereto is Attachment "D" is the Defendant's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.**

16.

**Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed**

**facts. A refusal to do so may result in the imposition of sanctions upon the non—cooperating counsel.**

17.

**Plaintiff contends the legal issues to be tried are as follows:**

1. What amount of damages, if any, is Plaintiff entitled to as compensatory damages for the false arrest and imprisonment (up to the time when Plaintiff was released from the custody of the Gwinnett County Sheriff's Office) of Plaintiff by Defendant Ashley on September 24, 2009?

2. Is Plaintiff entitled to an award of punitive damages and, if so, in what amount?

**Plaintiff's Objections to Defendant's Legal Issues to be Tried**:

Plaintiff objects to the Defendant's first enumerated "legal issue" in light of the Court's <u>Order</u> granting summary judgment to the Plaintiff on liability grounds.

**Defendants contend the legal issues to be tried are as follows**:

1. Whether the Defendant violated the Plaintiff's Fourth Amendment rights?

2. What damages, if any, are to be awarded, should the jury find there was a violation of the Plaintiff Fourth Amendment rights, as a result of her arrest made by the Defendant?

18.

Attached hereto as Attachment "F—1" for the Plaintiffs and Attachment "F—2" for the Defendant is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Federal Rule of Evidence 702), impeachment and rebuttal witnesses whose use can be reasonably anticipated must be included. Each party shall also attach to the list a reasonably specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "G—1" for the Plaintiffs and "G—2" for the Defendant are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for Court stamping purposes. A courtesy copy of each party's exhibit list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to Plaintiff's exhibits, numbered blue stickers to Defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple Plaintiffs or Defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objection to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against

whom the objections are raised. **Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.**

**Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the Court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.**

**Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.**

The parties reserve the right to supplement their exhibit lists in light of the outstanding discovery matters addressed herein provided, however, that supplemental exhibit lists shall be exchanged no later than no later than fourteen (14) days preceding the date on which trial is set to commence by order of this Court, with any objections thereto due no later than seven (7) days before the date on which trial is set to commence by order of this Court.

20.

**The following designated portions of the testimony of the persons listed below may be introduced by deposition:**

**<u>Plaintiff's Response:</u>**

Plaintiff does not anticipate introducing testimony by deposition except for purposes of cross-examination, impeachment or in the event a witness becomes unavailable at time of trial.

**<u>Defendant's Response</u>:**

None.  However, the parties shall have the right to take the deposition of any witness for the preservation of testimony, provided that there will be no resulting delay in the trial of this case.

**Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non—essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.**

21.

**Attached hereto as Attachments "H—1" for Plaintiffs and "H— 2" for the Defendant are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.**

The parties request permission to submit their trial briefs, if any, prior to jury selection.

22.

**In the event this is a case designated for trial to the Court with a jury, requests for charges must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, NDGa, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one page) statement of that party's contentions, covering both claims and defenses, which the Court may use in its charge to the jury.**

**Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's <u>Pattern Jury</u> Instructions and Devitt and Blackmar's Federal Jury practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principal (with minimum verbiage) from each cited authority.**

The parties will submit their Requests to Charge in accordance with these instructions.

23.

**If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order.  If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the Court.**

<u>Plaintiff's Request</u>:

Plaintiff requests that a special verdict form be submitted to the jury and, in accordance with the above directive, has attached hereto as Attachment "I-1" a proposed jury verdict form.  Defendant does not request a special verdict form.

24.

**Unless otherwise authorized by the Court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.**

Plaintiff's Request:

Plaintiff requests a total of one (1) hour for argument.  Counsel's experience in trying civil rights cases has been that additional time may be necessary to ensure that the jury fully understands how to evaluate the evidence in light of the particular constitutional violation involved.

Defendants' Request:

No additional request made.

25.

**If the case is designated for trial to the Court without a jury, counsel are directed to submit proposed findings of fact and conclusions of law not later than the opening of trial.**

Not applicable.

26.

**Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person on <u>N/A</u>, to discuss in good faith, the possibility of settlement of this case. The Court (_____) has or ( X ) has not discussed settlement of this case with counsel. It appears at this time that there is:**

|   |   |
|---|---|
| _____ | **A good possibility of settlement** |
| _____ | **Some possibility of settlement** |
| __√__ | **Little possibility of settlement** |
| _____ | **No possibility of settlement** |

<u>Plaintiff's Response:</u> Counsel for plaintiff had attempted to initiate settlement discussions with lead counsel for Defendant near or after the close of discovery but received no response from counsel for Defendant.  As a result, no meeting has been held in accordance with LR 16.3.

27.

**Unless otherwise noted, the Court will not consider this case for a special setting, and it will be scheduled by the Clerk in accordance with the normal practice of the Court.**

28.

The Plaintiff estimates that she will require  2   days to present her evidence. Defendant estimates that it will require   1  days to present his evidence. It is estimated that the total trial time is  3   days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case ( ____ ) submitted by stipulation of the parties or ( _____ ) approved by the Court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the Court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the Court, unless specifically authorized in writing by the Court.

IT IS SO ORDERED this _____ day of _____ 2012.

_____
STEVE C. JONES, JUDGE
UNITED STATES DISTRICT COURT

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this Court.

For the Plaintiff:

*/s/Albert Wan*_____
**Albert Wan**
Albert Wan, Attorney at Law
1201 Peachtree Street NE
400 Colony Square, Suite 200
Atlanta, Georgia 30361
albert@albertwanlaw.com

*/s/William J. Atkins*
**William J. Atkins**
Atkins & Fife, LLC
6400 Powers Ferry Road, Ste 355
Atlanta, Georgia  30339
Tel. (404) 969-4130
bill@atkinsfife.com

For the Defendant:

*/s/ Kendrick McWilliams*
Attorney for Defendant
SHIVERS & ASSOCIATES
Caller Service No. 1808
Alpharetta, GA 30023-1808
T: (678) 317-7104
F: (678) 317-8917
kmcwilli@travelers.com

## ATTACHMENT A

The parties request that the following questions be posed to the panel regarding their qualifications to serve:

1. Whether any member of the jury panel or their immediate family is related by blood or marriage to the following:

   Drupatty Jaipersaud
   Arnold Jaipersaud
   Timothy R. Ashley
   Leslie Narain
   Chris Narain
   Tegnarine Narain

2. Whether any member of the jury panel or their immediate family is an employee of the City of Lawrenceville, Georgia

The Plaintiff requests that the Court pose the following additional questions to the panel regarding their qualifications to serve:

1. Are any of you under 18 years of age?

2. Have you been convicted of a crime punishable by imprisonment for more than one year, and if so have your civil rights been restored?

3. Do any of you have a physical or mental health condition that would prevent you from serving as a juror in this case?

4.    Are you presently a resident of one of the following counties:   Fulton County, Cobb County, Clayton County, Cherokee County, DeKalb County, Douglas County, Gwinnett County, Henry County, Newton County or Rockdale County?

5.    Have any of you resided in one of these counties for a period of less than one year?

## ATTACHMENT B-1

## PLAINTIFF'S PROPOSED VOIR DIRE

1.   How long have you lived at your current address?

2.   Have you ever lived in Gwinnett County, Georgia;
     a.   If so, when did you live there?
     b.   How long did you live there?

3.   Do you now, or have you ever owned your own business?  Please describe.

4.   Have you ever held a management or supervisory position(s) in the work place?  Please describe.

5.   To the best of your knowledge, have you ever been subjected to a background check by any of the employers listed above and/or any other prospective employer?

6.   Based on what you know about the origins of your ancestors, do you consider yourself an immigrant even if you are a United States citizen?
     a.   If so, do you have a favorable or unfavorable view of life as an immigrant in the United States?
     b.   What do you believe are the most important qualities that an immigrant should possess in order to succeed in the United States?

7.   Please describe your educational background.

8.   If you are married, or have a life-partner, please describe their educational background by including the information you have provided for yourself concerning your educational background.

9.   Do you have any formal legal training?

10.   Do you believe that citizens have the right to question or challenge the actions of a law enforcement officer or other government official? If so, under what circumstances?

11.   Have you ever questioned or challenged the actions of a law enforcement or other government official?

12.   Have you, your spouse/partner, or other close family members ever served in the military?

13.   Have you ever served as a juror before?

14.   Have you ever served as a jury foreperson?

15.   Was there anything about your experience as a juror which would make you not want to serve again?

16.   Have you ever served on a grand jury?

17.   Have you ever had an unfavorable experience with the legal system? If yes, please explain.

18.   Have you ever called the police for any reason? If yes, please explain.

19.   Have you, or has someone you know, ever been employed by any law enforcement agencies; and, if so, in what capacity?

20.   Have you had any training, courses, or work experience in law enforcement, criminal justice or administration of justice?  If yes, please describe.

21.   Have you ever been on a ride-along with police officers? If yes, describe the experience.

22.   Have you ever held an elected position in any local, State or the Federal government?

23.    Do you know, however slightly, either Albert Wan or William J. Atkins, the attorneys representing the plaintiff in this case?

24.    Do you know, however slightly, Kendrick McWilliams or any employee at the law firm of Shivers and Associates in Alpharetta, Georgia?

25.    Have any of you been represented by, or sought the advice or services of, any employee, lawyer or partner of the law firm of Shivers and Associates?

26.    Do you now or have you ever maintained an insurance policy of any kind with Travelers Insurance Company?

## ATTACHMENT B-2

## DEFENDANT'S PROPOSED VOIR DIRE

Defendant respectfully requests the Court propound the following questions to the jury:

1.  Whether any member of the jury panel, or their immediate family members, know however slightly any of the following people who might appear as witnesses:

    - Defendant – Timothy Ashley
    - Plaintiff – Drupatty Jaipersaud
    - Arnold Jaipersaud

2.  Does any member of the jury know, or has ever been represented by, the attorneys involved in this case?

3.  Has any member of the jury had physical or psychological impact resulting from hurricane Katrina?

4.  Has any member of the jury, or their immediate family, ever been employed in law enforcement?

5.  Has any member of the jury, or their immediate family, had an incident, good or bad, with a law enforcement officer, that would prevent them from being able to fairly evaluate the facts and evidence in this case without any undue prejudice to either party.

6.  Has any member of the jury, or their immediate family, ever been arrested?

7.  Has any member of the jury, or their immediate family, ever been involved in a public dispute, requiring police intervention?

8.      Has any member of the jury, or their immediate family, ever been suffered prejudice or indignities based on their race?

9.      Is there anything in any juror's past experiences, or that is currently happening, that would make it difficult for that juror to sit on a case where the juror will be ask to consider claims against the police?

10.     Has any member of the jury, or their immediate family, been a party to or a witness to a lawsuit? If so, please tell us about that.

11.      Is there any member of the jury that feels that, for whatever reason, they cannot fairly consider the evidence of all parties in this case?

12.      Does any member of the jury have any physical injury or illness that would make it difficult to sit and listen to the evidence?

13.      The Defendant Timothy Ashley is a City of Lawrenceville Police Officer. Is there anything in any juror's past experiences, or that is currently happening, involving the City of Lawrenceville, Georgia that would make it difficult for that juror to sit on this case?

14.      Have you ever appeared as a witness in a grand jury, criminal prosecution, courts martial, or in any court proceeding (including giving a deposition)?

15.      Have you ever been interviewed or questioned, or given a statement to the police or an investigator (in any situation other than a traffic accident)? Yes No

16.      Have you ever served on a federal or state trial jury?

17.      Have you ever served as the foreperson (foreman) of a trial jury?

18.      Have you ever served in the military?

19.      Have you ever, in any way, been involved or ever applied for a job in any form or any kind of law enforcement work, including, but not limited to,

security guard, police, shore patrol, military police, air police, sheriff, deputy sheriff, IRS investigator, FBI, GBI, private investigator, prison or jail guard, et. Cetera? (If so, please state when, where, and in what capacity)

20.   Have you ever had any legal training or worked in a law office in any capacity?

21.   Do you have any friends or family members who are lawyers?

22.   Do you know anyone who works inside the Federal Courthouse?

23.   Do you know anyone who works, or has worked, in a courthouse anywhere?

24.   Do you know anyone who is a prosecutor, or works for any prosecutorial agency anywhere (i.e. Fulton County District Attorney's Office or any District Attorney, Solicitor, U.S. Attorney's office, Attorney General's office, etc.? Yes No

25.   What is your opinion of plaintiff's or their attorneys?

26.   What is your opinion of defense attorneys?

27.   Have you ever been the victim of a crime?

28.   Have you ever been convicted or pled guilty or nolo contendere (no contest) to a felony charge?

29.   Have you or any member of your family ever had a problem which you attribute to alcohol or drugs?

30.   Do you currently have any family member(s) or close friend(s) in jail or prison? If yes, please explain who is incarcerated, where, and for what offense are they serving time.

31.   Do you have any bumper stickers on your car or truck? If yes, please state the content of the bumper stickers(s)

32.   Have you ever owned or fired a handgun, rifle or other firearm? If yes, please list any guns that you have owned.

33.   If there are currently any guns in your household, please state what kind?

34.   Have you ever had any training or do you have any special interest in guns, ballistics or weapons?

35.   In general, do you believe there should be gun control laws? Why/why not?

36.   Do you have any strong opinions or feelings about the criminal justice system, positive or negative? If yes, please describe those opinions or feelings.

37.   Is there any criminal case that you have followed closely because it personally touched your family or caught your interest?

38.   Have you ever been involved with any legislative effort to create a law or change a law?

39.   How would you describe your political views?

40.   Have you ever worked, volunteered, or contributed money to any organization involved in supporting crime victims?

41.   Have you ever been involved in, close to, or affected by any situation in which a couple is breaking up or divorcing, and there is a greater degree or hostility than you would consider "usual" or "normal"? If yes, please briefly describe the situation.

## ATTACHMENT C

## PLAINTIFF'S OUTLINE OF THE CASE

A.    SUMMARY OF PLAINTIFF'S CONTENTIONS

On September 24, 2008, Plaintiff Drupatty Jaipersaud was working her usual 18-hour day at a Chevron gas station in Lawrenceville, Gwinnett County.  Ms. Jaipersaud purchased the gas station in December 2007 after working in a number of other fields including medicine and hospitality.

Around 1:35 p.m. on September 24, 2008, Ms. Jaipersaud and her husband, Arnold Jaipersaud, who was also working at the gas station that day, had an encounter with a disgruntled customer, Mr. Leon Noble.  Mr. Noble was upset because he was unable to purchase gas from one of the gas pumps.  Ms. Jaipersaud explained to Mr. Noble that she had no gas for sale because of a region wide gas shortage.  Mr. Noble then accused Ms. Jaipersaud of being racist and called her a "coolie."  An argument ensued between the Jaipersauds and Mr. Noble.

At some point, Mr. Noble's wife, Nathalie Noble, ran into the store and began yelling at Mr. and Ms. Jaiperesaud.  (Jaipersaud Dep. 27:23-28:10.)  Both Mr. and Ms. Jaipersaud pleaded for the Nobles to leave the store as they were disturbing customers and disrupting their business operations.  Based on the threatening behavior of the Nobles, Ms. Jaipersaud became concerned for her own

safety and sought to quell the disturbance at her own place of business by retreating behind the cash register area and calling 911. Ms. Jaipersaud remained inside the cash register area until the police arrived.

At approximately 1:45 p.m., the first two officers from the Lawrenceville Police Department arrived at the gas station in response to Ms. Jaipersaud's 911 call, one of whom was Timothy Ashley, the defendant in this case. The Nobles were standing outside of Ms. Jaipersaud's store at this time. Both Ashley and the other responding officer, Ron Cone, spoke first to the Nobles. Mr. Noble complained to the officers that Ms. Jaipersaud had hit him on the arm and had called him a "nigger" during their prior encounter. Ms. Jaipersaud never called Mr. Noble a "nigger," however. Nor did Ms. Jaipersaud hit Mr. Noble as Mr. Noble had claimed to the officers.

When Cone and Ashley entered Ms. Jaipersaud's store to continue their investigation, Ms. Jaipersaud told them that Mr. Noble was the one who had started the altercation and that she had never touched or hit Mr. Noble. Ms. Jaipersaud then suggested to Ashley that he take a look at the surveillance video recording from earlier in the day which would confirm her story that she never hit Mr. Noble.

Even though Ms. Jaipersaud and her husband knew nothing about operating the surveillance system, they still tried to help Ashley and the other officers in playing back the video.  Ms. Jaipersaud gave Ashely the system's operating manual and her log-in password and Mr. Jaipersaud offered to assist the officers in figuring out how to play back the video.  Ms. Jaipersaud also allowed the officers free and unlimited access to the back room in which the surveillance system was stored.

After spending about six minutes trying to play back the surveillance video with no success, Defendant Ashley grew frustrated and upset.  He asked Ms. Jaipersaud what she usually did to operate the machine.  Ms. Jaipersaud responded that she generally asked her son to help with such a task.

Defendant Ashley directed Ms. Jaipersaud to get her son to the store immediately.  Ms. Jaipersaud informed Ashley that her son was, at that time, attending class at Clayton State University, and that he did not usually answer his phone while school was in session.  She also told Ashley that the university was over an hour away from the store, a fact that Ashley knew himself, having been a Clayton County police officer at one time.

Still, Ashley demanded that Ms. Jaipersaud furnish the immediate presence of her son.  At one point, Ms. Jaipersaud even tried to call her son in Ashley's

presence, but could not reach him.  Unsatisfied and upset, Ashley threatened to arrest Ms. Jaipersaud if she could not produce her son immediately.  In a bout of frustration, Ms. Jaipersaud complained to Ashley that he was making unreasonable demands on her.  She also asked Ashley what he would arrest her for to which he replied for not cooperating.  At that point, Ashley grabbed Ms. Jaipersaud's arm, pulled her out of the store, and arrested her.

Ms. Jaipersaud was driven and booked in to the Gwinnett County Detention Center (GCDC).  She was kept in a holding cell at the GCDC for approximately 10 hours before she was bailed out by her brother and her mother.  Ms. Jaipersaud hired an attorney to defend her against the criminal charges which resulted from her arrest by Ashley.  These charges consisted of disorderly conduct and simple battery.  The matter ultimately proceeded to trial in Gwinnett County State Court. The trial lasted approximately two days and the jury acquitted Ms. Jaipersaud on all charges.  The jurors urged Ms. Jaipersaud to file suit against Ashley in their post-trial conversations with Ms. Jaipersaud.

B.    RELEVANT RULES, REGULATIONS, STATUTES AND CASE LAW

Plaintiff lists the statutes and cases generally applicable to her claims and relevant defenses.  Plaintiff will supplement this general list with a more detailed review of relevant statutes and cases in Plaintiff's trial brief.

1.   <u>Statutes</u>:

    42 U.S.C. § 1983
    42 U.S.C. § 1988
    O.C.G.A. § 16-10-24(a) (misdemeanor obstruction)
    O.C.G.A. § 16-11-39(a)(1) (disorderly conduct)

2.   <u>Applicable Case Law</u>:

    i.   *<u>Federal Law:  False Arrest (w/o arrest warrant) and probable cause for disorderly conduct and/or misdemeanor obstruction</u>*

        *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004)
        *Skop v. City of Atlanta*, 485 F.3d 1130 (11th Cir. 2007)
        *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006)
        *City of Houston v. Hill*, 482 U.S. 451 (1987)
        *Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008)
        *Thornton v. City of Macon*, 132 F.3d 1395 (11th Cir. 1998) (per curium)
        *Sheth v. Webster*, 145 F.3d 1231 (11th Cir. 1998)

    ii.   *<u>Georgia Law:  Probable Cause for Disorderly Conduct</u>*:

        *Williams v. State*, 305 Ga. App. 657 (2010)
        *Meadows v. State*, 303 Ga. App. 40 (2010)
        *Dudley v. State*, 264 Ga. App. 845 (2003)

    iii.   *<u>Georgia Law: Probable Cause for Misdemeanor Obstruction</u>*:

        *Lackey v. State*, 286 Ga. 163 (2009)
        *Connelly v. State*, 298 Ga. App. 223 (2009)
        *Woodward v. Gray*, 241 Ga. App. 847 (2000)
        *Coley v. State*, 178 Ga. App. 668 (1986)

C.   <u>DAMAGES AND OTHER RELIEF SOUGHT</u>:

Plaintiff expects to seek recovery of special, compensatory and punitive damages at trial, as follows:

(1)   <u>Special Damages</u>:  Plaintiff seeks special damages to compensate her for economic injuries, including reduced earning capacity causally related to the constitutional injuries inflicted by the Defendant. Plaintiff is entitled to recover such damages under well-established authority in this Circuit.  <u>See generally</u> *Wright v. Sheppard*, 919 F.2d 665, 669 (11th Cir. 1990).   Plaintiff will establish special damages in excess of $4,500.

(2)   <u>Compensatory Damages</u>: The Plaintiff will seek an award of compensatory damages in an amount to be determined by the enlightened conscience of the jury.   Compensatory damages in this case are available to compensate Plaintiff for her humiliation, fear, frustration, anger, embarrassment, loss of reputation, self doubts, and the entire range of emotional reactions that result from being subjected to an unlawful arrest by the Defendant.   Compensatory damages are available to plaintiffs in civil rights cases under the common law, as applied to such matters in Federal Court.   <u>See generally</u> *Carey v. Piphus*, 435 U.S. 247, 254-55, 98 S.Ct. 1042, 1047-48, 55 L.Ed.2d 252 (1977); *Wright v. Sheppard*, 919 F.2d 665, 669 (11th Cir. 1990).  As the exact amount of compensatory damages

can only be determined by the enlightened conscience of the jury, Plaintiff cannot fairly determine the amount she is likely to request prior to trial, however, Plaintiff expects to seek in excess of **$250,000.00** in compensatory damages.

(3)    <u>Punitive Damages</u>: The Plaintiff expects to establish that the Defendant acted willfully and with reckless disregard for her federally protected rights under the Fourth Amendment.    Plaintiffs alleging constitutional violations such as false arrest may recover punitive damages from an individual defendant. <u>See generally</u>, *Smith v. Wade,* 461 U.S. 30, 51 (1983).  The Plaintiff will seek an award of punitive damages in an exact amount to be determined by the enlightened conscience of the jury and expects to seek an amount proportional to the jury's award of special and compensatory damages.

(4)    <u>Prejudgment Interest</u>:    To the extent allowed by applicable law, Plaintiff will seek recovery of prejudgment interest. <u>See generally</u>, *Loefler v. Frank*, 486 U.S. 459 (1988).

 (5)    <u>Attorneys Fees and Costs</u>:  Plaintiffs seek attorneys' fees and costs as authorized by 42 U.S.C. § 1988, based on the applicable hourly rates of counsel and the actual amount of all costs incurred in this litigation.

Through preparation of the Pre-Trial Order, attorneys' fees exceed **$40,000.00** and expenses exceed **$500.00.**

Plaintiff's good faith estimates above will conform to the evidence produced at trial.

## ATTACHMENT D

## Defendant's Outline of the Case

**I.      Defendant's Factual Summary of the Cause of Action**

On September 24, 2008 the Lawrenceville Police Department dispatched units to respond to a call regarding a fight in progress at the Chevron gas station located at 256 Hurricane Shoals Road.  Detective Timothy R. Ashley approached the scene at the same time as Officer R. Cone.  Upon Detective Ashley's arrival, a couple approached his vehicle.   Mr. Leon Noble and Mrs. Nathalie Noble informed Detective Ashley that as they attempted to purchase gas, the pump flashed a message that they needed to see the clerk inside.  Mr. Noble went inside to speak with the clerk, who was also the owner of the establishment, Plaintiff Drupatty Jaipersaud.  The Plaintiff informed Mr. Noble that they were out of gas.  Mr. Noble suggested that they place a sign near the pump or a bag over the pumps location so that people would know that there was no gas available.  The Plaintiff responded by yelling at Mr. Noble calling him a "stupid nigger".  The Plaintiff then approached Mr. Noble and slapped him on or about the hand and wrist area.   Mrs. Noble informed the officers that she saw her husband backing away towards the door during the encounter with the Plaintiff.

Detective Ashley then went inside to speak with the Plaintiff and her husband.  The Plaintiff informed Detective Ashley that she had done nothing wrong.  Officer Cone then advised Detective Ashley that he had been out to this location on several calls regarding customer complaints that the Plaintiff had previously shouted racists comments at the customers and called the customers racist names.

This call was at least the third time that Officer Cone remembers having to respond to the location as a result of a patron complaining that they had been allegedly assaulted by the Plaintiff.  On all three occasions that customers stayed outside and waited for the police to respond to the scene.  On all three occasions the patrons complained that the clerk (Plaintiff) used racially derogatory terms towards them.  On the prior calls the Plaintiff informed Officer Cone the he would be unable to view the videotape for reasons the officer could not recall.

The Plaintiff then stated it was Mr. Noble who had been yelling and called her and her husband "cooley".  Mr. Jaipersaud informed Officer Cone that the remark is a racist term for someone from India.

Detective Ashley asked the Plaintiff to show him the video coverage for the past several minutes.  The Plaintiff informed Detective Ashley that she couldn't pull the video up.  Officer Wiemik attempted to work the video machine

but was unsuccessful.   The Plaintiff was asked how the machine could be accessed.  She stated that her son knew how to operate the machine.  Detective Ashley asked the Plaintiff to call her son and have him in route to the location. The Plaintiff became very upset and expressed to Detective Ashley that he could not come into her place of business and tell her what to do.  The Plaintiff then walked up to Detective Ashley in an offensive manner shouting and waving her hands.  Detective Ashley placed the Plaintiff under arrest for Disorderly Conduct and placed her in the back of Officer Carrier's patrol car.

Plaintiff brought this claim against the Defendant as a result of her arrest after the incidents above.

## II.   <u>Relevant Rules and Regulations</u>

The Fourth Amendment to the Constitution of the United States, The Fourteenth Amendment to the Constitution of the United States, 42 USC 1983, <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S. Ct. 2505 (1986); <u>Monell v. New York Dept. of Social Services</u>, 436 U.S. 658, 98 S. Ct. 2018 (1978); <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 109 S. Ct. 1197, 1203 (1989); <u>Kentucky v. Graham</u>, 473 U.S. 159, 105 S. Ct. 3099 (1985); <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 120; 112 S. Ct. 1061, 1066 (1992); <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009); <u>Saucier v. Katz</u>, 533 U.S. 194, 202; 121 S. Ct. 2151 (2001); <u>Baker v. McCollan</u>, 443

U.S. 137, 144; 99 S. Ct. 2689, 2694 (1979); <u>Mandel v. Doe</u>, 888 F.2d 783, 791 (11th

Cir. 1989); <u>Lyle v. Dodd</u>, 857 F. Supp. 958, 968 (N.D. Ga. 1994), quoting, <u>Polk</u>

<u>County v. Dodson</u>, 454 U.S. 312, 326, 102 S. Ct. 445 (1981); <u>Lovelace v. Dekalb</u>

<u>Cent. Probation</u>, 144 Fed. Appx. 793, 795 (11th Cir. 2005); <u>Dean v. Barber</u>, 951

F.2d 1210, 1214 (11th Cir.1992); <u>Jonas v. City of Atlanta</u>, 647 F.2d 580 (5th Cir.

1981); <u>Ruggiero v. Krzeminski</u>, 928 F.2d 558 (2d Cir. 1991); <u>Thomas v. Clayton</u>

<u>County Board of Education</u>, 94 F.Supp.2d 1290 (N.D. GA. 1999), <u>aff'd.</u> 261 F.3d

1160 (11th Cir. 2001); <u>Crosby v. Monroe County</u>, 394 F.3d 1328, 1332 (11th Cir.

2004); <u>Lee v. Ferraro</u>, 284 F.3d 118, 1194 (11th Cir. 2002); <u>Marx v. Gumbinner</u>, 905

F.2d 1503, (11th Cir. 1990); <u>United States v. Smith</u>, 799 F.2d. 709 (11th Cir. 1986);

<u>Ortega v. Christian</u>, 85 F. 3d. 1521, 1525 (11th Cir. 1996); <u>United States v.</u>

<u>Holloman,</u> 113 F.3d. 192 (11th Cir. 1997); <u>United States v. Banshee</u>, 91 F.3d. 99,

101 (11th Cir. 1996); Fed. R. Civ. P. 17(b); <u>Georgia Insurers Insolvency Pool v.</u>

<u>Elbert County,</u> 258 Ga. 317, 368 S.E.2d 500, 502 (1988); O.C.G.A. § 17-4-20(a); <u>Polk</u>

<u>v. State</u>, 200 Ga. App. 17 (1981); <u>Kidd v. Coates</u>, 271 Ga. 33, 518 S.E. 2d 124 (1999);

<u>Gilbert v. Richardson</u>, 264 Ga. 744, 747, 452 S.E. 2d 476 (1994); <u>Woodward v.</u>

<u>Gray</u>, 241 Ga. App. 847, 527 S.E.2d 595 (2000); <u>Adams v. Hazelwood</u>, 271 Ga. 414,

414-15, 520 S.E.2d 896 (1999); <u>Murphy v. Bajjani</u>, 282 Ga. 197, 203, 647 S.E.2d 54

(2007); <u>Murray v. Ga. Dept. of Transp.</u>, 284 Ga. App. 263, 265(2), 644 S.E.2d 290

(2007); <u>Bashir v. Rockdale County</u>, 445 F.3d 1323 (2006).

# ATTACHMENT E

# STIPULATED FACTS

The parties have been unable to agree on Stipulated Facts; however, counsel continue to work in good faith to reach an agreement and respectfully requests that the parties be permitted to tender Stipulated Facts to the Court prior to the Pre-Trial Conference.

## <u>ATTACHMENT "F-1"</u>

## PLAINTIFF'S WITNESS LIST

### <u>Plaintiff Will Call</u>:

**Drupatty Jaipersaud**
c/o Albert Wan, Attorney at Law

### <u>Plaintiff May Call</u>:

**Defendant Timothy Ashley**
c/o Kendrick McWilliams, Esq.

**Officer Ron Cone**
c/o Lawrenceville Police Department

**Officer Chris Carrier**
c/o Lawrenceville Police Department

**Officer E. Wiernik**
c/o Lawrenceville Police Department

**Officer Alan Bannister**
c/o Lawrenceville Police Department

**Arnold Jaipersaud**
1620 Cooper Lakes Drive
Grayson, Georgia 30017

**Leslie Narain**
1620 Cooper Lakes Drive
Grayson, Georgia 30017

**Taijpaul Deodath**
230 Clearwater Place
Lawrenceville, Georgia 30044

**Gloria Ramdat**
230 Clearwater Place
Lawrenceville, Georgia 30044

**Ramon Alvarado, Esq.**
261 W. Crogan Street
Lawrenceville, Georgia 30046

**Ronnie Heard**
430 Downing Street
Lawrenceville, Georgia 30046

**Ms. Kim Rapien**
Records Supervisor
Gwinnett County Sheriff's Department
2900 University Parkway
Lawrenceville, Georgia 30243

Individuals who were booked into the Gwinnett County Detention Center on or around the same time as Plaintiff subsequent to her 9/24/2008 arrest (addresses presently unknown; Plaintiff will supplement prior to trial)

Any witness listed by Defendant in its list of witnesses.  Plaintiff may request that she be permitted to call additional rebuttal witnesses based upon the testimony at trial.

## ATTACHMENT F-2

**The Following is the list of witnesses Defendant may call:**

**A. Defendant will have present at trial:**

1.  Detective Timothy Ashley – who may be contacted through his attorney of record, Kendrick K. McWilliams, 1000 Windward Concourse, Suite 210, Alpharetta, Georgia 30005.  Has personal knowledge of the facts relevant to this case.

**B. Defendant may have present at trial:**

1.  Drupatty Jaipersaud  - via her attorney of record, Albert Wan, 1201 Peachtree Street NE, 400 Colony Square, Suite 200, Atlanta, Georgia 30361.  Has personal knowledge of her culpable behavior that led to her arrest.

2.  Arnold Jaipersaud – 1620 Cooper Lakes Drive, Grayson, GA, 30017, 678.225.5801.  He has personal knowledge of the events giving rise to this litigation and the culpable behavior that led to Plaintiff's arrest.

3.  Mr. Leon Noble - 352 Downing Street, Lawrenceville, GA 30046-4592.  He has personal knowledge of the events giving rise to this litigation and the culpable behavior that led to Plaintiff's arrest.

4.  Mrs. Nathalie Noble - 352 Downing Street, Lawrenceville, GA 30046-4592.  She has personal knowledge of the events giving rise to this litigation and the culpable behavior that led to Plaintiff's arrest.

5.  Officer Cone – Lawrenceville Police Department – P.O. Box 2200, Lawrenceville, Georgia (770) 962 – 4173.  Responded to the call that is the subject of this litigation.

6.  Officer Wiemik – Lawrenceville Police Department – P.O. Box 2200, Lawrenceville, Georgia (770) 962 – 4173.  Responded to the call that is the subject of this litigation.

7.    Officer Welch – Lawrenceville Police Department – P.O. Box 2200,
      Lawrenceville, Georgia (770) 962 – 4173.  Responded to the call that is
      the subject of this litigation.

8.    Nadine Brooks – 522 Downing Street, Lawrenceville, Georgia 30045,
      678.984-6137.  Involved in a similar incident with the Plaintiff at the
      Chevron Station.

9.    Mariah Brooks – 522 Downing Street, Lawrenceville, Georgia 30045,
      678.984-6137.  Involved in a similar incident with the Plaintiff at the
      Chevron Station.

## ATTACHMENT "G-1"

### PLAINTIFF'S EXHIBIT LIST
*(Plaintiff reserves the right to **Amend** Exhibit List Prior to Pre-Trial Conference)*

| Ex. # | Exhibit Description |
|---|---|
| | 9/24/2008 Surveillance Video |
| | Surveillance video machine |
| | Citation issued to Drupatty Jaipersaud by Det. Ashley, 9/24/2008 |
| | Gwinnett County Jail Records – Drupatty Jaipersaud |
| | Lawrenceville Police Department GCIC check, 2/14/2012 |
| | Cash Bond document signed by Deodath Taijpaul, Nov. 3, 2008 |
| | State v. Jaipersaud, Accusation, Nov. 3, 2008 |
| | Notice of Jury Trial to Drupatty Jaipersaud |
| | State v. Jaipersaud, Final Disposition, Feb. 25, 2009 |
| | Sprint phone records – 678-984-5119, Ms. Jaipersaud's cell phone |
| | Sprint phone records – 678-749-2786, Leslie Narain's cell phone |
| | Charter phone records – 770-995-7666, Ms. Jaipersaud's store/gas station phone |

### Documents Identified For Use As Impeachment, Refreshing Recollection or other such use at trial

| Ex. # | Exhibit Description |
|---|---|
| | Incident Report by Ofc. R. Cone, dated Sept. 24, 2008 |
| | Summary Report by Det. Ashley, Case No. 080909060 |
| | Incident Report Narrative by Ofc. Cone, Case No. 080909060 |
| | Transcript of Criminal Trial, *State v. Jaipersaud* (2/24/2009 to 2/25/2009) |
| | Deposition of Det. Ashley (& Exhibits) |
| | Lawrenceville Police Dep't Operations Manual |
| | Deposition of Drupatty Jaipersaud (& Exhibits) |

## ATTACHMENT G-2

## Defendant's Exhibit List

The following is a list of tangible things in Defendant's possession that may be used to defend against Plaintiff's claims:

1.    Transcript of Plaintiff's deposition;

2.    Surveillance video from the Chevron location;

3.    Police incident report from Plaintiff's September 24, 2008 arrest;

4.    Police incident report from 8/22/2008;

5.    Police incident report from 7/20/2008;

## <u>Plaintiff's Objections to Defendant's Proposed Exhibits</u>

(Numbered Objections correspond to Document Numbers
on Attachment G-2)

1.     Plaintiff objects to use or introduction of her deposition testimony at trial
except as permitted under Fed. R. Evid. 613 (a) & (b); and 801(d)(1) or (2).

2.     None.

3.     Plaintiff objects to introduction of this exhibit at trial as hearsay.  Fed. R.
Evid. 801.

4.     Plaintiff objects to mention, use or introduction of this exhibit at trial as
hearsay (FRE 801); improper  character evidence (FRE 404); not relevant,
prejudicial, likely to cause confusion and/or waste time on collateral matters
(FRE 402 & 403).

5.     Plaintiff objects to mention, use or introduction of this exhibit at trial as
hearsay (FRE 801); improper  character evidence (FRE 404); not relevant,
prejudicial, likely to cause confusion and/or waste time on collateral matters
(FRE 402 & 403).

## ATTACHMENT I-1

## PLAINTIFF'S PROPOSED VERDICT FORM

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

DRUPATTY JAIPERSAUD,      )
                                    )
      Plaintiff,            )
                                      )
v.                                )   CIVIL ACTION FILE
                                    )   NO.: 10-CV-455-SCJ
TIMOTHY ASHLEY, in his    )
individual capacity,        )
                                      )
      Defendant.       )

---

## JURY VERDICT

### DAMAGES

1. Plaintiff should be awarded economic damages against Defendant Timothy Ashley for the reasonable cost of lost income, and other out of pocket expenses?

                                  **Answer (Yes or No):**   **_____**

                                  **Amount:**   **$_____**

2. Plaintiff should be awarded compensatory damages to compensate for physical pain, embarrassment, humiliation, emotional pain and mental anguish?

                                  **Answer (Yes or No):**   **_____**

                                  **Amount:**   **$_____**

3.    The Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights and punitive damages should be assessed against the Defendant.

**Answer (Yes or No):**    _____

*If you answer "No" please skip the next question and sign the Verdict Form. If your Answer is "yes" please answer the following question.*

4.    The Jury awards Punitive damages to the Plaintiff, as follows:

**Amount:**    **$**_____

**SO SAY WE ALL.**

_____
**Foreperson**

**DATED:**_____

## ATTACHMENT I-2

A general verdict form is acceptable for the Defendant.