IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DRUPATTY JAIPERSAUD, | ) | |
|     Plaintiff, | ) | Civil Action No. |
| | ) | 10-CV-455-SCJ |
|     vs. | ) | |
| | ) | |
| TIMOTHY R. ASHLEY, | ) | |
|     Defendant. | ) | |

**PLAINTIFF'S TRIAL BRIEF**

COMES NOW, Plaintiff Drupatty Jaipersaud (Plaintiff or "Jaipersaud") and respectfully submits her Trial Brief addressing certain legal issues and evidentiary issues likely to be raised during the trial on damages of this matter.

I. PLAINTIFF IS ENTITLED TO AN AMOUNT OF COMPENSATORY DAMAGES THAT WOULD FULLY AND REASONABLY COMPENSATE HER FOR THE LOSS, HARM AND INJURIES CAUSED TO HER BY DEFENDANT'S UNCONSTITUTIONAL ACTIONS

Compensatory damages are available to a plaintiff who establishes a prima facie violation of her constitutional rights under 42 U.S.C. § 1983. *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1363 n. 13 (11th Cir. 1982) ("Our precedents have held that both compensatory and punitive damages are available in actions brought under 42 U.S.C. § 1981 and § 1983") (citation omitted). The United States Supreme Court has explained in an action arising under 42 U.S.C. §1981 and §1982 that "compensatory damages for deprivation of a federal right are governed by federal standards." *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 239

(1969). This means that "both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes…. *Id.* at 240 (citation omitted).

An award of compensatory damages in a Section 1983 action is meant to compensate (for the losses and injuries suffered by the plaintiff) and to deter (so that the official misconduct at issue does not re-occur). *See Memphis Comm. School Dist. v. Stachura*, 477 U.S. 299, 306-07 (1986); *Carey v. Piphus*, 435 U.S. 247, 254 (1978) ("[T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights"). Deterrence is achieved when the plaintiff is fully and fairly compensated for her losses and injuries. *Stachura*, 477 U.S. at 307; *Carey*, 435 U.S. at 256-57. To that end, "compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation … personal humiliation, and mental anguish and suffering." *Stachura*, 477 U.S. at 307 (internal quotations and citation omitted). As Justice Harlan has explained, it is entirely appropriate for a court to compensate a plaintiff like Ms. Jaipersaud – i.e., one whose Fourth Amendment rights have been violated:

> And I think it is clear that Bivens advances a claim of the sort that, if proved, would be properly compensable in damages. The personal interests protected by the Fourth Amendment are those we attempt to capture by the notion of "privacy"; […] the experience of judges in dealing with private trespass and false imprisonment claims supports the conclusion that courts of law are capable of making the types of

2

> judgment concerning causation and magnitude of injury necessary to accord meaningful compensation for invasion of Fourth Amendment rights.

*Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 408-09 (1971) (Harlan, J., concurring).

    A.    A Full And Fair Compensatory Damage Award For A Fourth Amendment Violation Must Take Into Account Noneconomic and Nonphysical Injuries Suffered By The Plaintiff

The Supreme Court made clear in *Stachura* that a compensatory damages award in a Section 1983 case includes both nonphysical and noneconomic injuries such as "impairment of reputation … personal humiliation, and mental anguish and suffering." 477 US. at 307 (internal quotations and citation omitted).[1] The law in this and other circuits is no different.

Thus, in *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000), the Eleventh Circuit Court of Appeals expressly rejected the notion that "a § 1983 plaintiff can only satisfy the 'actual injury' requirement [of 42 U.S.C. § 1983] through evidence of ***direct*** monetary loss," and held that compensatory damages may be awarded for such injuries as "physical pain and suffering" "mental and emotional distress, impairment of reputation, and personal humiliation." *Id.* at 1231 (citations omitted). It is of no moment to the damages calculus that "the

---

[1] It is beyond dispute that physical injuries suffered as a result of a false arrest are compensable in a Section 1983 case, including "damages suffered because of the use of force in effect the arrest." *Williamson v. Mills*, 65 F.3d 155, 158-59 (11th Cir. 1995) (per curium) (citing *Hamm v. Powell*, 874 F.2d 766, 770 (11th Cir. 1989)).

monetary value of [an] injury [might be] difficult to calculate." *Id.*

The Sixth Circuit's recent decision in *Ellison v. Balinski*, 625 F.3d 953, 959-60 (6th Cir. 2010), underscores the importance of fully and fairly compensating a plaintiff for her nonphysical and noneconomic injuries in a Fourth Amendment, Section 1983 case. *Ellison* involved a claim under Section 1983 in which the plaintiff alleged that a police officer had searched his residence and seized certain property without probable cause in violation of the Fourth Amendment. A jury awarded the plaintiff $100,000 in compensatory damages and the defendant appealed, arguing, in part, that the damages award was excessive in light of the evidence adduced at trial. The defendant claimed that the plaintiff should have been awarded only $500 in compensatory damages or the value of the plaintiff's laptop which the defendant had unlawfully seized. The Sixth Circuit rejected this argument, first noting that compensatory damages could be awarded for "noneconomic injuries" in a Section 1983 case. *Id.* at 959. The court then went on to explain that: "At trial, Plaintiff offered uncontradicted testimony that Defendant's actions—resulting in his standing in his driveway in broad daylight as police conducted a search of his home while neighbors and family watched on—caused him to suffer mental anguish and harm to his reputation." This, the Sixth Circuit found, was sufficient to support the $100,000 in compensatory damages awarded to the plaintiff. *See also Wright v. Sheppard*, 919 F.2d 665, 669 (11th Cir.

1990) ("[I]t is ***not*** arguable that fair compensation for injury that consisted of losing two teeth is not limited to the treating dentist's bill. Having teeth has value, just as does having an arm or an eye, and loss of teeth is a subject for compensatory damages just as is loss of arm, eye, or leg") (emphasis added).[2]

Another type of nonphysical (at least in the most literal sense) and noneconomic injury for which plaintiff may be compensated at trial is the deprivation of liberty that plaintiff experienced as a result of Defendant's unlawful arrest. Put differently, a jury can and should take into account the time Plaintiff spent in wrongful confinement, removed from the free world, in arriving at a full and fair compensatory damages award. The leading case on this principle of federal false arrest damages is *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004). *Kerman*, like the present case, involved a claim of false arrest against police officers under Section 1983 and the Fourth Amendment. Also like this case, the plaintiff in *Kerman* spent an appreciable amount of time in custody, which the

---

[2] In *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F. 3d 1112 (11th Cir. 2006), the Eleventh Circuit upheld a compensatory damages award of $117,000 in which the plaintiff was falsely and unlawfully detained by employees of Barnes and Nobles after an employee of a Barnes and Noble store made allegations against the plaintiff that he had touched her inappropriately. Such an award, the Eleventh Circuit held, was appropriate under Florida state law on damages for false imprisonment, where the plaintiff presented the following evidence:

> That he suffered embarrassment when he had to explain the incident to his wife and children, that he developed a facial twitch, which he attributes to the incident, that he has significantly altered his shopping habits, that he has lost weight, that he has been unable to sleep, and that he was barred from entering a Barnes & Noble store for the rest of his life.

*Id.* at 1118.

5

court described as "overnight." *Id.* at 126. In a well-reasoned and thoroughly researched opinion, the Second Circuit held that "the damages recoverable for loss of liberty for the period spent in wrongful confinement **are separable** from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering" (emphasis added), and the district court's failure to instruct the jury on this aspect of compensatory damages constituted "fundamental error." *Id.* at 125, 129. It is important to note that in reaching this conclusion, the Second Circuit rejected the argument that an award of compensatory damages for loss of liberty was no different from a damages award for the violation of an abstract right also known as "presumed damages" – the latter having been deemed by the Supreme Court in *Carey* and *Stachura* as an appropriate type of damages award in a Section 1983 action. *Id.* at 129-30. As the Second Circuit put it:

> The present case does not involve either procedural due process or an attempt to vindicate an abstract societal interest. **Rather, it involves an anything-but-abstract physical detention.** And although a given person's loss of time may be difficult to evaluate in terms of dollars, his loss of liberty is not just "virtually certain" to occur [as in a situation involving "presumed damages" where the damages stem from the violation of the right itself]; it is inseparable from the detention itself.

*Id.* at 130 (emphasis added).

The Eleventh Circuit has, in fact, implicitly endorsed the jury's consideration of this principle of federal false arrest damages in a case that predated *Kerman* by almost 20 years: *HC by Hewett v. Jarrard*, 786 F.2d

6

1080 (11th Cir. 1986). *Jarrard* involved a class action by juvenile detainees which they brought to challenge the conditions of conferment at a detention center in Florida. One issue on appeal involved the appropriateness of awarding compensatory damages for among other things "the imposition of isolation without procedural due process." *Id.* at 1088. The Eleventh Circuit had no trouble concluding that an award of damages would be appropriate for **both** the time spent by the juvenile plaintiffs in wrongful confinement and the harm suffered by the juvenile plaintiffs during this period of time. *Id.* ("Compensatory damages are appropriate where juveniles have wrongfully received solitary confinement") (citiaton omitted).

II. PLAINTIFF IS ENTITLED TO A FULL AND FAIR PUNITIVE DAMAGES AWARD IN THIS SECTION 1983 ACTION WHERE THE DEFENDANT EXHIBITED A CALLOUS AND RECKLESS DISREGARD TO THE FOURTH AMENDMENT RIGHT OF THE PLAINTIFF TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES

Courts uniformly agree that punitive damages are available in a Section 1983 case. As the Supreme Court put it, punitive damages could "be awarded in a proper case under Section 1983 with the specific purpose of deterring or punishing violations of constitutional rights." *Carey*, 435 U.S. at 257 n.11. *See also Stallworth v. Shuler*, 777 F.2d 1431, 1435 (11th Cir. 1985) ("Punitive damages are of course available under 42 U.S.C. §§ 1981 and 1983…"). As is the case with an award of compensatory damages, federal law governs the entitlement of a punitive

damages award in Section 1983 cases. *See Jackson v. Pool Mortg. Co.*, 868 F.2d 1178, 1181 (10th Cir. 1989) ("*[F]ederal* standards govern the determination of punitive damages under federal civil rights statutes"); *Gordon v. Norman*, 788 F.2d 1194, 1199 (6th Cir. 1986) (same) (citations omitted). "Thus, punitive damages may be awarded under § 1983 even where they would not normally be recoverable under the local law in the state where the violation occurred." *Gordon*, 788 F.2d at 1199 (citations omitted).

The leading case on punitive damages in a Section 1983 action is *Smith v. Wade*, 461 U.S. 30 (1983). There, Justice Brennan, writing for the majority of the Court, ruled not only that punitive damages may be assessed against a defendant in a Section 1983 case, but that the standard for such an award need only be that of "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law." *Id.* at 51. In ruling as it did, the Court rejected the argument that a Section 1983 plaintiff had to show that a defendant acted with "actual malicious intent." *Id.* at 37. Such a standard, the Court found, failed to property vindicate the purpose of a punitive damages award – that is, to "deter[] and punish[] *all* intentional or reckless invasions of the rights of others." *Id.* at 54.

Key to determining the reasonableness of a punitive damages award is, as the Supreme Court has made clear, the " 'degree of reprehensibility of the defendant's conduct.' " *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538

8

U.S. 408, 419 (2003) (quoting *BMW of N. Am. Inc. v. Gore*, 517 U.S. 559, 575 (1996)). In the context of a false arrest case, such reprehensibility exists when the defendant "effectuate[d] the arrest knowing that he lacked probable cause to do so, or, at least, with conscious indifference to the possibility that he lacked probable cause." *Iacobucci v. Boulter*, 193 F.3d 14, 26 (1st Cir. 1999).

"[P]roof of a defendant's awareness of the risk of violating federal law [including the Fourth Amendment] may be circumstantial." *Mendez-Matos v. Municipality of Guaynabo*, 557 F.3d 36, 49 (1st Cir. 2009) (citation omitted). Some examples of the kinds of circumstantial evidence that may be relevant to the defendant's risk awareness in the punitive damages context are: (1) the egregiousness or outrageousness of the defendant's conduct; (2) the presence of an "extensive body of federal law on a particular issue"; and (3) the occupation of the defendant (where by virtue of said occupation the defendant should be in a position to understand that his conduct is unlawful). *Id.* (citations omitted).

Lastly, courts have held that the defendant bears the burden of proving his financial condition during the punitive damages phase of the trial. As the Second Circuit put it: "[T]he decided cases and sound principle require that a defendant carry the burden of showing his modest means – facts peculiarly within his power – if he wants this considered in mitigation of damages." *Zarcone v. Perry*, 572 F.2d 52, 56 (2d Cir. 1978) (collecting cases).

Where there exists an indemnification agreement for punitive damages, however, both the Second Circuit and Seventh Circuit have held that a defendant is **not allowed** to raise the issue of his financial resources to reduce his exposure to a potential punitive damages award. According to the Second Circuit:

> Although we do not decide the question of whether a fact-finder can rely upon the existence of an indemnity agreement in order to *increase* an award of punitive damages, we rule that a fact-finder can properly consider the existence of such an agreement as obviating the need to determine whether a defendant's limited financial resources justifies some *reduction* in the amount that would otherwise be awarded. It would be entirely inappropriate for a defendant to raise the issue of his limited financial resources if there existed an indemnity agreement placing the burden of paying the award on someone else's shoulders.

*Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997) (citing *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996)).[3]

III. THE PLAINTIFF IS ALLOWED TO INTRODUCE EVIDENCE OF SIMILAR ACTS BY DEFENDANT IN ORDER TO ESTABLISH HER ENTITLEMENT TO PUNITIVE DAMAGES

Plaintiff is entitled to introduce evidence of Defendant's prior bad acts in order to establish her claim to punitive damages. This is so because the subjective intent of the defendant – that is, whether he acted with reckless disregard to the plaintiff's Fourth Amendment rights – is squarely at issue in assessing whether

---

[3] It should be noted that Rule 411 of the Federal Rules of Evidence does not prohibit the admission of insurance or indemnification-type evidence for the purpose of proving damages; the Rule only applies to prohibit the use of such evidence to establish liability. *See DSC Communications Corp. v. Next Level Communications*, 929 F. Supp. 239, 245-47 (E.D. Tex. 1996).

punitive damages should be imposed against a defendant. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999). Judge Duffey held as much in the case of *Tomczyk v. Rollins*, No. 1:00-CV-3417-WSD, 2009 WL 1044868 (N.D. Ga. Apr. 20, 2009):

> The Court finds that Defendant's conduct toward third parties may be relevant and admissible to the issue of punitive damages liability and probative on the issues of whether Defendant's actions constituted willful misconduct or that entire want of care which would raise the presumption of conscious indifference to consequences or that his conduct was engaged in with the specific intent to cause harm to the Plaintiff.

*Id.* In order to reduce the risk of prejudice that may result from the admission of such evidence, however, Judge Duffey also signaled that he would provide the jury with a limiting instruction upon the admission of the similar acts evidence at issue to ensure that the jury considered such evidence for the sole purpose of determining entitlement to punitive damages. *Id.*

Similar act evidence is also relevant to proving entitlement to a punitive damages award because it is precisely this "pattern of misbehavior" that punitive damages are meant to address and to deter. Thus, the Supreme Court has consistently held that "repeated misconduct is more reprehensible than an individual instance of malfeasance" and should therefore be considered in the punitive damages calculus. *Gore*, 517 U.S. at 577. *See also Pacific Mut. Life Ins. Co v. Haslip*, 499 U.S. 1, 21-22 (1991) (observing that "the existence of frequency

of similar past conduct" is a relevant factor in determining the reasonableness of a punitive damages award).

Respectfully submitted this 31st day of July 2012.

| | |
|---|---|
| s/ Albert Wan, Esq. | s/ Bill Atkins, Esq. |
| Albert Wan, Attorney at Law | William J. Atkins |
| 1201 Peachtree Street NE | Atkins & Fife, LLC |
| 400 Colony Square, Suite 200 | 6400 Powers Ferry Road, Suite 355 |
| Atlanta, Georgia 30361 | Atlanta, Georgia 30339 |
| | |
| (404) 872-7760 – Tel. | (404) 969-4130 – Tel. |
| albert@albertwanlaw.com | bill@atkins-law.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2012, I electronically filed the attached with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Kendrick K. McWilliams, Esq.
Attorney for Defendants
Shivers & Associates
Caller Service No. 1808
Alpharetta, GA 30023-1808
678-317-7104 – Tel.
678-317-8917 – Fax
kmcwilli@travelers.com – Email

Bill Atkins, Esq.
Attorney for Plaintiff
Atkins & Fife, LLC
6400 Powers Ferry Road, Suite 355
Atlanta, Georgia 30339
(404) 969-4130 – Tel.
bill@atkins-law.com

/s/ Albert Wan
Georgia Bar No. 334224
Attorney for Plaintiff

1201 Peachtree Street
400 Colony Square, Suite 200
Atlanta, GA 30361
404-872-7760 – Tel.
404-872-7764 – Fax
albert@albertwanlaw.com – Email